BEHNKE, d/b/a NATIONAL CAR RENTAL SYSTEM, Respondent, v. HERTZ CORPORATION and another, Appellants.

*No. 606 (1974). Argued October 1, 1975.—*
*Decided December 10, 1975.*
(Also reported in 235 N. W. 2d 690.)

For the appellants there was a brief by *Godfrey & Trump*, attorneys, and *Thomas W. Godfrey* of counsel, all of Milwaukee, and oral argument by *Thomas W. Godfrey*.

For the respondent there was a brief by *Whyte & Hirschboeck, S. C.*, attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Mr. Harding*.

HEFFERNAN, J. The case arises from a restrictive employment contract, the breach of which, it is alleged, was induced by the Hertz Corporation. From a judgment awarding $982.26 compensatory damages and $10,000 punitive damages to the plaintiff, Marvin A. Behnke, d/b/a National Car Rental System, the Hertz Corporation and Keith A. Mott, a Hertz employee, have appealed.

We conclude that the restrictive employment contract was invalid as a matter of law; and, accordingly, the case ought not to have been submitted to the jury, and the complaint of the plaintiff must be dismissed.

The facts of record show that Barbara A. Kreft was hired as a counter girl by the National Car Rental System, which had a place of business only at the Milwaukee airport. At the time of her hiring, she signed an agreement with National, which, in the part pertinent to this appeal, provided:

"I agree not to work for any car rental competitor in the city of Milwaukee for one year if and when this present job is terminated."

The National Car Rental business in Milwaukee is affiliated with a national franchise operation. The franchise for the city of Milwaukee is owned by the plaintiff, Marvin A. Behnke. Barbara Kreft worked for Behnke at the car rental operation at the airport from May 26, 1972, until November 20, 1972. On that date she informed Betty Behnke, who managed the business for her husband, that she intended to terminate her employment with National; and on or about the same day Barbara Kreft commenced working for the Hertz rent-a-car service at their railroad-depot location.

Because of the conduct of Hertz in allegedly inducing the breach of the employment contract, National sought damages from Hertz.

While it is alleged that the Hertz Corporation maliciously induced the termination of the contract, Hertz's conduct is irrelevant if the contract itself is void as being unreasonable. We conclude that it is.

The validity of the contract is controlled by sec. 103.465, Stats.:

"103.465 **Restrictive covenants in employment contracts.** A covenant by an assistant, servant or agent not to compete with his employer or principal during the

term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

While that statute is controlling, the question which must be resolved under the terms of the statute is whether "the restrictions imposed are reasonably necessary for the protection of the employer or principal." Richards, in an exhaustive and scholarly treatment, *Drafting and Enforcing Restrictive Covenants Not to Compete,* 55 Marquette Law Rev. (1972), 241, points out that the statute is based almost completely upon the pre-existing structure of the common law as established in Wisconsin and elsewhere.

Contracts in restraint of trade are universally looked upon with disfavor by the common law; and as the Restatement, 2 *Contracts,* p. 987, sec. 513, provides:

"A bargain is in restraint of trade when its performance would limit competition in any business or restrict a promisor in the exercise of a gainful occupation."

However, as sec. 516 of the Restatement, 2 *Contracts,* points out, an agreement in restraint of trade is not unreasonable in some circumstances. Sec. 516 (f), p. 996, finds not unreasonable as a restraint of trade:

"A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent."

Comment *h* on clause (f) of the Restatement, 2 *Contracts,* p. 1001, sec. 516, provides:

"*h.* A promise of a former employee will not ordinarily be enforced so as to preclude him from exercising skill and knowledge acquired in his employer's business, even if the competition is injurious to the latter, except so far as to prevent the use of trade secrets or lists of customers, or unless the services of the employee are of a unique character."

The contract here does not conform to those standards of reasonableness. Barbara Kreft's services were not unique in nature; there were no trade secrets involved; and, unlike a route man or a salesman on the road, there were no lists of customers that she could use subsequently for her own benefit or to the detriment of her employer. Accordingly, no contract limiting the future right of employment of Barbara Kreft, irrespective of either the space or time duration requirements of the contract, could be valid. Her services were not of a nature, in the absence of a far stronger showing of potential damage to her employer, that it was socially justifiable to curtail her future right of employment.

While the duration of the one-year restriction for other employment would perhaps be reasonable in almost all cases involving an otherwise valid contract, the territorial scope of the restriction here was not valid.

She had been employed by National at the rent-a-car counter at the airport. When she left her employment to work for Hertz, she was hired not to work at the Hertz airport counter, but at the depot.

The Wisconsin cases are uniform that the scope of the restriction cannot in any case be broader than the scope of the activities of the restraining employer. While the plaintiff justified the restriction covering all of the city of Milwaukee, because that was the scope of National's franchise, National did not operate to the limits of its franchise but only did business at the airport.

In the absence of any evidence showing that Barbara Kreft's employment would take trade secrets or cus-

tomers from National, there was no evidence that her departure and her previous employment redounded at all to the benefit of Hertz. She brought nothing with her but an attractive personality and an ability to meet the public—attributes which, from the record, cannot be credited to her experience at National.[1]

Even asuming that a pleasant personality might have induced a customer with whom Barbara Kreft had become acquainted to go to a counter where she was employed rather than to the National counter, she was not operating in an area where she could have attracted customers away from National. She was working at the railroad depot, where Hertz had a counter and where National did not.

The case of *Wisconsin Ice & Coal Co. v. Lueth* (1933), 213 Wis. 42, 250 N. W. 819, controls the disposition of this case. *Wisconsin Ice* involved a restrictive covenant which restrained an employee from delivering or soliciting ice business in the city of Milwaukee for a period of two years after leaving the employment of the plaintiff. The court said:

"There is no question, from an examination of the record, that the territory described in the contract here involved is more extensive than that in which defendant worked for the Kilbourn Company. . . . a restrictive covenant could only be limited geographically by the territorial extent of the employer's business." (P. 46)

---

[1] It is undisputed that the training Barbara Kreft received upon commencing her employment with National was of a very perfunctory nature. The work involved the filling in of simple forms and checking the identification of any person who wished to use credit or to rent a vehicle. No expertise was required to spot credit risks. Barbara Kreft was simply instructed to call the credit card company to see if a proffered credit card remained in force. In the event a customer desired credit without evidence of a line of credit, Barbara Kreft was instructed to call Mrs. Behnke, who made the decision. Barbara Kreft's job at National involved little expertise and no latitude for the exercise of discretion.

The court went on further to say that a covenant of the type contemplated in *Wisconsin Ice* "would break down all proper limitations upon this type of covenant." (P. 47) The court further stated:

"It is generally proper for the employer, by such a contract, to exact a covenant not to compete in such territory as may constitute the field of the *employee's* activities, but the covenant can go no further than this." (P. 47) (Emphasis supplied.)

The court in *Wisconsin Ice* held the covenant void because the territorial scope of the restriction exceeded the area of the employee's activities. We hold the employment contract herein invalid for this reason, in addition to the reason set forth above.

The fact that the jury held that the agreement was reasonable is immaterial where, as here, it could not lawfully make the finding reflected by its verdict. It is unlawful in a case such as this to restrict an employee's future employment to a territorial extent greater than that of the employee's prior activities. The covenant was void as a matter of law. The question should not have been put to the jury.

While the trial court permitted the jury to decide that Hertz had induced the breach of the contract and its conduct in so doing was motivated by malice, we do not reach those questions here. Since the agreement restraining Barbara Kreft's future employment was unreasonable and void under the facts, it is immaterial whether Hertz induced the breach of the agreement or whether such conduct, if in fact it occurred, was malicious.

The question of compensatory damages and punitive damages is not presented, since there can be no cause of action for the alleged breach of an invalid contract.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.