JAX, Plaintiff-Appellant, v. JAX, Defendant-Respondent.

*No. 766 (1974). Submitted on briefs March 1, 1976.—*
*Decided July 12, 1976.*
(Also reported in 243 N. W. 2d 831.)

For the appellant the cause was submitted on the briefs of *Kay, Gissen & Hanson* of Richland Center.

For the respondent the cause was submitted on the brief of *David E. Nelson* of Richland Center.

DAY, J. This is an action to recover on a promissory note. The plaintiff, Leonard C. Jax, filed an amended complaint on April 11, 1973, alleging that the defendant, Helen Jax, had, on February 23, 1970, executed and delivered a promissory note in the amount of $1,000 payable in one year and bearing interest at the rate of six percent per annum. It was also alleged that Helen Jax had received the sum of $1,000 in cash in the form of a check issued by Goplin Realty, Inc., of Richland Center, Wisconsin. The complaint further stated that no part of the note had been paid and prayed for judgment on the note including interest plus attorney's fees, costs and disbursements.

In her answer, Helen Jax denied that she received the check as alleged. She also denied that she had executed and delivered to Leonard Jax a promissory note. The case was tried to the court on November 9, 1973.

The issues on the trial were whether Helen Jax had executed a promissory note in favor of Leonard Jax and whether, as consideration for that note, she had received $1,000 as a cash loan from Leonard Jax. Leonard Jax

introduced into evidence a promissory note containing the alleged terms and bearing the signature of Helen Jax. He also introduced a $1,000 check issued by Goplin Realty, Inc., and payable to Leonard Jax and Helen Jax. The check bore the endorsements of both Leonard and Helen Jax and had been cashed.

The trial court found that Helen Jax had not signed the note and had not received the proceeds of the $1,000 check alleged to have served as the consideration for the note. It accordingly dismissed the plaintiff's claim and entered judgment for the defendant. We reverse and order a new trial on all issues.

The plaintiff and the defendant were divorced in November 1966. During their marriage the couple operated a tavern located in Richland county. Leonard Jax sold the tavern on a land contract to Warren Schumacher. Part of the proceeds of that sale were, according to Leonard Jax, to be applied to the reduction of the mortgage on a house for Helen Jax's benefit. In February 1970, before the amount due on the land contract had been fully paid, Warren Schumacher sold the tavern to Helen Jax. Goplin Realty, Inc., handled that sale. Mr. Schumacher paid the remaining amount due on the land contract to Leonard Jax on February 26, 1970, the same day that his sale of the tavern to Helen Jax was closed. Both transactions were completed at the same time with all parties present.

Leonard Jax testified that Helen Jax told him she wanted to buy the tavern from Mr. Schumacher and asked for $1,000 to purchase the inventory. Leonard Jax agreed to loan her the money. According to him, the money was paid through Goplin Realty from the amount he received from Mr. Schumacher as the balance due on the land contract. In return, he stated he received a promissory note for $1,000 signed by Helen Jax. He testified that he picked the note up at the

office of Bowen Houck, a Richland county attorney, and did not actually see the defendant sign it. However, he stated that Mr. Houck told him Helen Jax had been in the office to sign the note. After the note came due he asked her for payment several times. However, each time she denied having signed the note and denied owing him $1,000.

Helen Jax testified that she never asked the plaintiff for $1,000 and that she borrowed the money for the inventory from one Eugene Collins. She denied that the signature on the promissory note was hers. She also denied, initially, that she had endorsed the $1,000 check alleged by Leonard Jax to have been received by her in exchange for the note. She later conceded that the endorsement was "possibly" hers, but denied cashing the check or otherwise receiving its proceeds.

Mr. Bowen Houck was also called to testify. Mr. Houck stated he had been contacted by a realtor with respect to the sale of the tavern and that he drew up some papers for the closing. Mr. Houck stated that he had done some legal work for Helen Jax during the six-month period covering the execution of the promissory note and that he "probably was" her attorney at the time. Her counsel objected to his testimony and the trial court instructed Mr. Houck that his testimony relating to the note transaction was subject to the attorney-client privilege. As a result, Mr. Houck refused to answer any questions concerning the preparation and execution of the note.

Stanley Goplin was associated with Goplin Realty at the time of the transaction here involved. He stated that he was involved in the negotiations concerning Schumacher's sale of the tavern to Helen Jax. She applied the earnest money and the realty firm drew up the offer to purchase with certain contingencies relating to financing. The purchase of the tavern itself was financed by the

Richland County Bank. However, Mr. Goplin stated Helen Jax told him she needed more money than the bank would give her and asked him to negotiate with Leonard Jax for a $1,000 loan. Mr. Goplin testified further that Mr. Houck's office was to prepare the promissory note pursuant to the terms agreed upon by the parties.

Gary Henning, who was also a Goplin associate at the time, identified and explained the entries on two closing statements prepared on that date. One statement represents the transaction between Mr. Schumacher and Helen Jax. The other statement listed the "buyer" as Warren Schumacher and the "seller" as Leonard and Helen Jax. Mr. Henning stated that this statement was not really a closing statement but represented only the termination of the land contract agreement between Mr. Schumacher and Leonard Jax. The inclusion of Helen Jax as "seller" on that exhibit was apparently a mistake. Only Leonard Jax signed the statement as "seller."

Mr. Henning explained that all amounts due Leonard Jax from Mr. Schumacher were paid by check drawn on the Goplin Realty trust account. The top portion of the statement indicated that a total of $4,685 was due from Mr. Schumacher. The lower portion, labeled "Broker's Settlement with Seller," set forth various disbursements charged to the seller and deducted from the total amount due. A separate check was issued by Goplin Realty for each disbursement. Each check was made payable both to Leonard Jax and the appropriate creditor. A disbursement of $1,000 followed the typewritten notation "Promissory Note to Helen Jax." Mr. Henning identified the corresponding check for $1,000 drawn on the Goplin trust account and payable to both Leonard Jax and Helen Jax.

Mr. Henning also stated that, under the procedure employed by the Goplin Realty at closings, Helen Jax

would have been given the $1,000 check. However, he did not remember whether he personally gave her the check or whether she endorsed it in his presence. Stanley Goplin verified Mr. Henning's description of the procedures employed at the closing.

Leonard Jax's initial contention on appeal is that the trial court erred in ruling that testimony by Attorney Bowen Houck concerning his involvement in the preparation and execution of the promissory note was precluded by the attorney-client privilege. Leonard Jax argues that it was not sufficiently established that Mr. Houck was acting as Helen Jax's attorney at the time the note was alleged to have been prepared. In addition, Leonard Jax asserts that the circumstances relating to the note's preparation and Helen Jax's act in signing it could not constitute confidential communications such as are within the scope of the privilege.

At the time this case was tried, the basic principles of the attorney-client privilege were set forth in sec. 885.22, Stats. 1969. That section provided:

"**Communication to attorneys.** An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment. This prohibition may be waived by the client, and does not include communications which the attorney needs to divulge for his own protection, or the protection of those with whom he deals, or which were made to him for the express purpose of being communicated to another, or being made public."[1]

The testimony of both Mr. Houck and Helen Jax was equivocal on whether he was in fact her attorney at the time the note was drafted in his office, or whether he

---

[1] The privilege is now governed by sec. 905.03, Stats., as adopted by this court at 59 Wis. 2d Rp. 111, effective January 1, 1974.

merely drafted it in response to a request from the realtor. Assuming that the attorney-client relationship did exist at the time the note was drafted and signed, this would not preclude the attorney from being required to testify regarding the drafting, signing, and delivery of the note. The privilege would not extend to those acts.

This court has noted that the privilege embodied in sec. 885.22, Stats., protects *communications* and not necessarily facts or evidence. *State ex rel. Dudek v. Circuit Court* (1967), 34 Wis. 2d 559, 578, 150 N. W. 2d 387. The policy of the privilege was expressed in *Jacobi v. Podevels* (1964), 23 Wis. 2d 152, 156, 157, 127 N. W. 2d 73:

"One of the fundamental policies of our law, and one which dominates in the absence of a special policy arising in particular types of situations, is that the judicial system and rules of procedure should provide litigants with full access to all reasonable means of determining the truth. Secrecy of communications between one person and his attorney is one of the exceptions. It is based upon the recognition of the value of legal advice and assistance based upon full information of the facts and the corollary that full disclosure to counsel will often be unlikely if there is fear that others will be able to compel a breach of the confidence."

Because the attorney-client privilege is "an obstacle to the investigation of the truth" it should be "strictly confined within the narrowest possible limits consistent with the logic of the principle." *Jacobi v. Podevels, supra,* at page 157; *Herman v. Schlesinger* (1902), 114 Wis. 382, 90 N. W. 460; *Tomek v. Farmers Mut. Automobile Ins. Co.* (1955), 268 Wis. 566, 569, 68 N. W. 2d 573.

The act of signing a promissory note is not privileged simply because it is done in the presence of an attorney. The privilege contemplates a confidential disclosure by a client to his attorney which the client rea-

sonably believes to be related to obtaining professional legal services. The signing of a document which represents an agreement between two parties is not usually intended as an act of disclosure to the attorney, or, if it is, as a confidential one. *See:* 8 Wigmore, *Evidence,* (McNaughton rev. 1961), p. 596, sec. 2309. It would go beyond the purpose of the privilege to preclude the attorney from testifying to that act, especially where, as here, the signature is required to give the document legal efficacy.

This court has, in the past, followed the general rule that an attorney may testify to the circumstances surrounding the preparation and execution of a document which is intended to be made public or to be relayed to a third party. *See: Herman v. Schlesinger, supra.* It appears from the testimony in this case that if Mr. Houck was in fact involved in the preparation and execution of the note, it was as a mere scrivener assigned to put the agreement of the parties in legal form. Except to the extent that any legal advice was sought or given, Mr. Houck should have been instructed to testify to what he knew about the note's preparation and execution, and the circumstances surrounding delivery of the note to Leonard Jax.

From the record it is clear that the trial court erred in its ruling on this matter. Its only concern was with whether an attorney-client relationship existed between Mr. Houck and Helen Jax at the time that the note was alleged to have been prepared and executed. Having determined that such a relationship did exist, the court confined itself to instructing Mr. Houck that his testimony concerning that transaction would be subject to the limitations of the privilege. It did not rule on whether any of the specific questions posed by Leonard Jax's counsel called for disclosure of privileged information.

Its attitude is demonstrated by the following statements in the written decision:

"It is plaintiff's position that what plaintiff was attempting to educe from Mr. Houck was not a communication, even though the attorney-client relationship existed between Mr. Houck and Mrs. Jax.

"The court left it up to Mr. Houck as to whether he should testify or not and Mr. Houck elected not to testify in view of the objection of plaintiff's [sic] counsel."

A mere showing that the communication was from a client to his attorney is insufficient to warrant a finding that the communication is privileged. *See:* McCormick, *Evidence,* (2d ed.), pp. 187, 188, sec. 91. When a claim of privilege is challenged, the trial court should hold a hearing on the merit of the contention, not only with respect to the existence of the relationship, but also with respect to the nature of the information sought to be obtained. The trial court should not have deferred that decision to the judgment of Mr. Houck. The rule is now embodied in sec. 901.04 (1), Stats.: "Preliminary questions concerning . . . the existence of a privilege . . . shall be determined by the judge."

The defendant Helen Jax does not argue the merits of the privilege question. She contends that any error in that regard should not serve as the basis for reversal. Her initial reason for that position is that the plaintiff is precluded from raising the error on appeal because he failed to make an offer of proof as to the specifics of Houck's testimony.

Ordinarily, an offer of proof is necessary to preserve an alleged trial court error in excluding evidence. *City of Franklin v. Badger Ford Truck Sales, Inc.* (1973), 58 Wis. 2d 641, 656, 207 N. W. 2d 866. Here it is clear from sec. 901.03, Stats.,[2] that a formal offer

---

[2] "901.03 **Rulings on evidence** (1) EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or

of proof was not required. It was obvious from the context within which the questions were asked and Leonard Jax's testimony as to his conversation with Mr. Houck why the evidence was being sought. The questions were obviously designed to elicit information which would support the plaintiff's claim that the defendant had signed the note in Houck's presence and that the note had been prepared according to the terms of the alleged loan.

The defendant Helen Jax also contends that any error relating to the claim of privilege was harmless because it is apparent that Mr. Houck's testimony would have been considered cumulative on the issue of whether Helen Jax signed the note. She argues that the trial court fully considered the possibility that Mr. Houck may have testified to seeing Helen Jax sign the note when it specifically found that she did not sign it.

An error is not prejudicial so as to require a new trial unless this court finds that, but for the error, there probably would have been a different result. *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 374, 149 N. W. 2d 626; *Fischer v. Fischer* (1966), 31 Wis. 2d 293, 307, 142 N. W. 2d 857.

In its written decision the trial court stated:

"It is apparent that what plaintiff sought to obtain from Mr. Houck was testimony that he saw Helen Jax sign this document. I do not know whether he saw her sign it or not. If he did not see her sign it, no damage has been done to plaintiff. If in fact he *advised* her to sign it, that would be within the prohibition of the statute. Whether Attorney Houck should have been permitted to

---

excludes evidence unless a substantial right of the party, is affected; and

"...

"(b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."

testify or not, the plaintiff's case would fail because he has not shown that there was any consideration for the note, which was one of the defenses raised by the defendant."

It is clear from this statement that the court did not consider Houck's testimony to be merely cumulative. While the court made a specific finding that Helen Jax did not sign the note, it must be assumed that the finding was based on the evidence actually presented at the trial. That evidence did not include testimony by Mr. Houck that he witnessed the signing. It is apparent that the court deemed any error it may have committed on the privilege issue to be harmless only because of its subsequent conclusion that there was a failure of consideration.

██ The trial court's failure to determine whether the specific information sought to be obtained from Mr. Houck was privileged was error. The question inquiring whether Mr. Houck saw Helen Jax sign the note did not call for privileged information. Had Mr. Houck answered "yes" to that question, the court's finding on the signature issue may have been different.

The defendant argues, however, that any error on the part of the trial court affecting its finding that the defendant did not sign the note is harmless in light of its additional finding that there was a failure of consideration.

██ Failure of consideration is an affirmative defense and it must be pleaded as such. *Prestin v. Baumgartner* (1970), 47 Wis. 2d 574, 579, 177 N. W. 2d 825. The plaintiff points out that the defendant's answer contains only a denial that she received the $1,000 check as alleged in the complaint. In the *Prestin Case* this court held that such a denial was insufficient to raise the defense of failure of consideration. However, this deficiency is raised for the first time on appeal and has

therefore been waived. Sec. 263.19, Stats.; *Jessup v. LaPin* (1967), 35 Wis. 2d 186, 194, 195, 150 N. W. 2d 342.

The record reveals considerable conflict on the issue of whether Helen Jax actually received the check or the proceeds of the $1,000 check. The check itself was issued by Goplin Realty, Inc., to Leonard and Helen Jax and signed by Gary Henning. Mr. Henning testified that the check represented part of the amount still owing Leonard Jax from Warren Schumacher on the land contract between those parties. Mr. Schumacher had apparently paid the total amount due into the Goplin Realty trust account and, as was its practice, Goplin Realty issued checks on that account. The checks were made payable to Leonard Jax and individual creditors who were entitled to part of the proceeds of that sale.

Each such disbursement was recorded on the "closing statement" which represented the transaction between Leonard Jax and Mr. Schumacher. The purpose of this procedure was to provide all parties with a record of where the money from the sale went. One of the disbursements listed on that statement was for $1,000 and was labeled "Promissory Note to Helen Jax." According to Mr. Henning, that entry corresponded to the $1,000 check. The testimony also indicated that the notation on the statement was a mistake and should have read "Promissory Note from Helen Jax."

Leonard Jax testified that when he received the check from Mr. Henning he endorsed it and handed it back. He did not personally give the check to Helen Jax, nor did he see her endorse it. Mr. Henning stated that in the ordinary course of the realty's procedures at closings, Helen Jax would have received the check. The check bore endorsements of Leonard Jax and Helen Jax.

While the defendant conceded that the signature on the check was probably hers, she testified she could

not remember seeing the check at the closing and did not recall it being handed to her to sign. She stated that if she did receive it she probably signed it and handed it back. She at all times denied receiving the proceeds of the check. Although the check had been cashed, it does not bear a notation indicating that it was deposited into a particular account.

It was the plaintiff's position that the $1,000 check represented a loan to the defendant for the purchase of the tavern's inventory. Stanley Goplin testified that he negotiated such a loan. The defendant insisted that she got the money for the inventory in a cash loan from one Eugene Collins. Mr. Collins did not testify. There was some indication that at least part of the proceeds from the sale by Leonard Jax to Mr. Schumacher was originally to have gone to the defendant or to have been applied for her benefit pursuant to the judgment of divorce. Leonard Jax stated that those amounts had all been paid and that the $1,000 check was not a part of that obligation. The defendant stated that she should have received some of the money paid by Mr. Schumacher to the plaintiff at the time of the closing but she did not object at that time.

In its written decision on the consideration issue, the trial court stated:

"The check bore a later date than the note, which would tend to show that there was no consideration for the note. In addition, the defendant denied getting any money from the check proceeds. Plaintiff did not establish by any proof that the defendant got the money for the check. All that the proof showed was that the check was cashed. The record is devoid of any proof as to what happened to the check proceeds. The defendant admitted that she may well have endorsed the check at the time of the closing, but she denied that she cashed it. For all the record shows, the plaintiff as well as defendant could have cashed the check. It appears to have been cashed rather than deposited.

"Defendant not only denied that she cashed the check but testified under oath that she borrowed the money elsewhere with which to pay for the inventory."

In its findings of fact the court found that the $1,000 check, if cashed by the defendant and if the proceeds were kept by her, would have constituted consideration for the note. However, the court also found that "such check was not cashed by the defendant, nor did she receive the proceeds of the same, or any part or portion thereof, nor were any such funds applied for her benefit." The court concluded that "the plaintiff has not shown that the defendant received any consideration for the note as forms the basis of the plaintiff's suit."

The court's finding was based upon an erroneous view of the law. It is apparent from the decision as well as from the findings of fact and conclusions of law that the court placed the burden of proving consideration on the plaintiff. It is clear, however, that the burden of proving failure of consideration is on the defendant and that such failure must be shown by clear and satisfactory evidence. Sec. 403.307 (2), Stats.; *Estate of Hatten* (1940), 233 Wis. 199, 215, 288 N. W. 278.

Negotiable notes are presumed to have been given for consideration. *Estate of Schoenkerman* (1940), 236 Wis. 311, 294 N. W. 810. While the defendant did offer testimony tending to indicate that she did not receive the proceeds of the check, we do not believe that the finding made by the trial court is supported by clear and satisfactory evidence. The court's error in placing the burden of proof on this issue on the plaintiff, we believe, affected its finding in this regard. Accordingly, that finding and the judgment based upon it cannot stand.

We conclude that a new trial is necessary on both the signature and consideration issues for the reasons stated above. However, we should point out what we consider to be a further error by the trial court with respect to

its finding that Helen Jax did not sign the note. We do so in order that the error may be avoided in the new trial.

The evidence on the signature issue was in sharp conflict. The plaintiff offered a promissory note purportedly signed by Helen Jax. It was his position that the note was given in return for a personal loan of $1,000 to enable the defendant to complete her purchase of the tavern. Helen Jax at all times denied that she had borrowed any money from the plaintiff. She also denied that the signature on the note was hers. The trial court, in its written decision, stated:

"The plaintiff did not introduce any handwriting expert to prove that the note was actually signed by Helen Jax. The plaintiff did introduce other checks which were admittedly endorsed by Helen Jax. The signature on the note looks very similar to the signature on the other documents, but in view of her positive denial that she executed and delivered this note, and in the absence of any expert testimony that it is her signature, the Court cannot find that she did execute and deliver the note. The signature on the note looked like the signature of Helen Jax, but it might have been a clever forgery."

It is apparent that the sole basis for the court's finding was the defendant's denial that she had signed the note. However, it appears that mere denials, under the circumstances of this case, cannot support a finding that the signature is not real.

As a "negotiable instrument" within the meaning of sec. 403.104, Stats.,[3] the note and actions to recover on

[3] "403.104 Form of negotiable instruments; 'draft'; 'check'; 'certificate of deposit'; 'note.' (1) Any writing to be a negotiable instrument within this chapter must:

"(a) Be signed by the maker or drawer; and

"(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

it are governed by the terms of the Uniform Commercial Code as adopted in this state. Sec. 403.307 (1), Stats., provides:

"403.307 **Burden of establishing signatures, defenses and due course.** (1) Unless specifically denied in the manner provided in s. 891.25 each signature on an instrument is admitted. When the effectiveness of a signature is put in issue:

"(a) The burden of establishing it is on the party claiming under the signature; but

"(b) The signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required."

A defendant in an action to recover on a promissory note bearing his signature must do more than simply deny that the signature is his. The official comment to this section of the code provides:

"The question of the burden of establishing the signature arises only when it has been put in issue by specific denial. . . . The burden is on the party claiming under the signature, but he is aided by the presumption that it is genuine or authorized (as) stated in paragraph (b). . . . [This] means that until some evidence is

---

"(c) Be payable on demand or at a definite time; and

"(d) Be payable to order or to bearer.

"(2) A writing which complies with the requirements of this section is:

"(a) A 'draft' ('bill of exchange') if it is an order;

"(b) A 'check' if it is a draft drawn on a bank and payable on demand;

"(c) A 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;

"(d) A 'note' if it is a promise other than a certificate of deposit.

"(3) As used in other chapters of this code, and as the context requires, the terms 'draft,' 'check,' 'certificate of deposit' and 'note' may refer to instruments which are not negotiable within this chapter as well as to instruments which are so negotiable."

introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of the defendant or more accessible to him. He is therefore required to make some sufficient showing of the grounds for his denial before the plaintiff is put to his proof. His evidence need not be sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor. *Until he introduces such evidence the presumption requires a finding for the plaintiff.* Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff." (Emphasis supplied.) 40B W. S. A., pp. 183, 184.

Here, the defendant introduced no evidence to support a finding that the signature on the note was forged or unauthorized. The presumption of validity, therefore, was not rebutted. Furthermore, the plaintiff was not required to introduce expert testimony to support his claim. The trial judge, sitting as trier of fact, is entitled to make his own comparison of signatures and, without the assistance of expert testimony, form his own opinion as to their authenticity. *See: Estate of Mc-Carthy* (1953), 265 Wis. 548, 61 N. W. 2d 819; *Brockton Credit Union v. Brockton Sav. Bank* (Mass., 1972), 282 N. E. 2d 687; *Ibanez v. Pfieffer* (1973), 350 N. Y. S. 2d 964, 76 Misc. 2d 363.

*By the Court.*—Judgment reversed and cause remanded for a new trial.