NALCO CHEMICAL COMPANY,
Plaintiff–Appellee,

v.

HYDRO TECHNOLOGIES, INCORPO-
RATED, Daniel H. Girmscheid and
Thomas S. Broge, Defendants–Appel-
lants.

No. 92–2278.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1992.

Decided Jan. 25, 1993.

Rehearing and Rehearing En Banc
Denied March 18, 1993.

Stephen N. Landsman (argued), Christian
L. Campbell, James M. Newton, Nalco
Chemical Corp., Naperville, IL, Ronald L.
Piette, William J. Richards, Piette & Jacob-
son, Milwaukee, WI, for plaintiff-appellee.

John A. Rothstein (argued), Jeffrey O.
Davis, Quarles & Brady, Milwaukee, WI,
for defendants-appellants.

Before BAUER, Chief Judge, RIPPLE,
Circuit Judge, and GRANT, Senior District
Judge.*

BAUER, Chief Judge.

This appeal results from the grant of a
preliminary injunction. We reverse the dis-
trict court decision, 791 F.Supp. 1352, va-

* The Honorable Robert A. Grant, Senior District
Judge for the Northern District of Indiana, is
sitting by designation.

cate the preliminary injunction, and remand for entry of judgment in favor of the defendants on only the issues addressed in this proceeding. We offer no opinion on the merits of the remaining issues in the case.

## I.

Nalco Chemical Company ("Nalco") produces water treatment chemicals and services, offering to its customers more than 3100 products and programs. (Record "R." 11 at 1). It is a big company, employing more than 6000 people in twelve operating groups. (R. 31 at 5). Two of those employees were Daniel Girmscheid and Thomas Broge. When Girmscheid and Broge began working for Nalco, they signed employment agreements containing clauses stating that they would not compete with Nalco if they left the company. The agreements are a form that Nalco uses for all employees. The form is not tailored to any particular person or job. (Transcript "Tr." 29–30). Girmscheid and Broge were employed in the "Watergy" group, part of the Water and Waste Treatment Division. (Tr. 12). The Watergy group geographically divides its United States markets into three regions, and those regions are divided into 24 districts. (Tr. 13). Girmscheid and Broge were assigned to district G–14, which encompasses eastern Wisconsin and parts of northern Illinois. (Tr. 16). In district G–14, Girmscheid was an account manager (Tr. 184), and Broge was a district sales representative. (Tr. 146).

On February 5 and February 6, 1992 respectively, Girmscheid and Broge left Nalco to work for a competitor, Hydro Technologies, Inc. ("Hydro"). Hydro conducts the same type of business as Nalco's Watergy division, and more than twenty Nalco customers switched their patronage to Hydro when Broge and Girmscheid joined the company. In April 1992, Nalco sued for immediate enforcement of the employment agreements to bar Broge and Girmscheid from having contact with any more Nalco customers. In its decision and order, the district court construed two clauses in the employment agreement as

prohibiting Girmscheid and Broge from contacting former or potential customers for two years in a four-county region in Wisconsin, then awarded Nalco a preliminary injunction. The court used broad language, ordering Girmscheid and Broge restrained from "committing a breach of [their] employment agreement[s]." An emergency hearing was held to clarify the order, but a different district judge determined that the order needed no further clarification. This appeal followed.

## II.

Nalco is a Delaware corporation that has its principal place of business in Illinois. Girmscheid and Broge are citizens of Wisconsin, and Hydro is incorporated in Wisconsin, where it also has its principal place of business. The parties are in federal court on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1).

To establish that the preliminary injunction is warranted, Nalco must show that 1) the case has some likelihood of success on the merits; 2) no adequate remedy at law exists and without the injunction Nalco will suffer irreparable harm; 3) any irreparable harm Girmscheid, Broge, and Hydro will suffer if enjoined is outweighed by the harm Nalco will suffer if the preliminary injunction is not awarded; 4) the public interest requires granting the injunction. The district court weighs each of these factors, and we defer to that assessment as we perform our review. We will reverse the district court decision only if we find an abuse of discretion, evidenced by a clear error of fact or law. *John Maye Co. v. Nordson Corp.*, 959 F.2d 1402, 1405 (7th Cir.1992).

All parties agree that Wisconsin law applies to the substantive issues in the case. The primary issue is whether the restraint prohibiting Broge and Girmscheid from competing is legally enforceable. Wisconsin has a statute that specifically addresses covenants restricting competition. That statute provides:

A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

Wis.Stat. § 103.465.

The employment agreement contains two paragraphs, numbers three and five, that Broge and Girmscheid construe as noncompetition clauses that are overbroad. Nalco acknowledges that paragraph five is a noncompetition clause. Nalco argues, however, that paragraph three is not a noncompetition clause, but rather it is a prohibition barring dissemination of confidential customer information that constitutes trade secrets. Broge and Girmscheid claim the provision prohibits them from soliciting for an indeterminate period any Nalco clients whose identities were learned through Nalco employment. The distinction is important, because if paragraph three concerns trade secrets, it is analyzed under the Uniform Trade Secrets Act, Wisconsin Statutes section 134.90, a different statute requiring different results.

### A. Paragraph three:

We agree with Nalco that paragraph three is a prohibition from releasing confidential customer information, not a prohibition of solicitation of Nalco customers.[1] In *Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis.2d 202, 218, 267 N.W.2d 242 (1978), the Wisconsin Supreme Court considered a similar restriction that prohibited former employees from ever disclosing their former employer's customer list to any person. In that case, the court found that the restriction, with no geographic or time limitations, was unreasonable and void. *Id.* Like that restriction, the Nalco restriction sets no geographic parameters, and although a geographic limitation is not required, *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis.2d 460, 464, 304 N.W.2d 752 (Wis.1981), a time limitation must be reasonable for a valid covenant. The clause is therefore void and unenforceable unless the confidential customer information qualifies as a trade secret. Under section 134.90, no time limit is required on trade secret restrictions.

Because the court used sweeping language in its order restraining Broge and Girmscheid from breaching the entire employment agreement (not just the noncompetition clauses), we must determine whether Broge and Girmscheid were properly ordered to follow the terms of paragraph three. If paragraph three protects trade secrets, then the defendants may be enjoined if they misappropriate the secrets. But if paragraph three protects information that does not constitute trade secrets, then the terms of the clause must be reasonable in time and scope to be enforceable. The question of whether the information in paragraph three is a trade secret is a question of law underlying the preliminary injunction.

The Wisconsin Supreme Court has determined that customer lists may constitute trade secrets if certain criteria are fulfilled. *Minuteman, Inc. v. Alexander,* 147 Wis.2d 842, 851, 434 N.W.2d 773 (Wis.1989); *see also Rollins,* 101 Wis.2d at 468–69, 304 N.W.2d 752 (what constitutes trade secrets depends on the particular circumstances). In *Minuteman,* the court determined that the factors listed in the *Restatement*

---

**1.** Paragraph three states:

3) Employee shall not, directly or indirectly, under any circumstances or at any time, either during the term of his employment or after its termination, communicate or disclose to any person, firm, association or corporation, or use for his own account, without Nalco's consent, any information acquired by him in the course of or incident to his employment relating to or regarding the names of customers of Nalco of Third Parties, the sales or service data of Nalco or Third Parties, furnished to him or secured by him in the course of his employment, or any other data or information concerning the business and activities of Nalco or Third Parties.

*(First) of Torts,* section 757, are helpful, but not all the factors must be fulfilled for information to constitute trade secrets. *Minuteman,* 147 Wis.2d at 851, 857, 434 N.W.2d 773. In that case, a former employee allegedly misappropriated the names of customers and their product orders. The court stated that the names and orders constituted a customer list, then remanded that issue to the district court to apply Wisconsin Statute section 134.90 to determine if the customer list was a trade secret. Section 134.90 states that "[I]n certain sectors of the business community identical or nearly identical products and/or services are sold to a small, fixed group of purchasers. In such an intensely purchaser-oriented market, a supplier's customer list could well constitute a trade secret." *Id.* We have found no published opinions since *Minuteman* applying the section 134.90 test using the *Restatement* factors as guidance. Our application of the law is not difficult, however, and we forge ahead.

■ The group of purchasers for Hydro and Nalco Watergy products is neither fixed nor small. The products are used in such common items as industrial boiler, heating, and cooling systems, and processed waste treatment systems. The target market for the products is broad, encompassing commercial buildings, universities and schools, hospitals and clinics, and industry. (Tr. 13). Even under the simple terms of the statute, Nalco's customer information does not qualify as trade secrets.

■ Next, we consider the Nalco employment agreement using the *Restatement* factors as guidance because the factors formerly comprised the trade secret test. *Minuteman,* 147 Wis.2d at 851, 857, 434 N.W.2d 773; *see also Corroon & Black–Rutters & Roberts, Inc. v. Hosch,* 109 Wis.2d 290, 295, 325 N.W.2d 883 (Wis. 1982) (setting forth former test for trade secrets). We examine 1) the extent to which the information is known outside of Nalco's business; 2) the extent to which the information is known by employees and others involved in Nalco's business; 3) the measures taken by Nalco to guard the secrecy of the information; 4) the value of the information to Nalco and Hydro; 5) the amount of effort or money expended by Nalco to develop the information; and 6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Corroon & Black–Rutters,* 109 Wis.2d at 295, 325 N.W.2d 883.

In *Corroon & Black–Rutters,* the information the former employees possessed was more than "bare bones" information. In that case, an insurance agent took a list that had names, addresses, and other detailed information. The court assumed the other detailed information included the names of contact people, coverage amounts, and renewal dates. The court distinguished this information from complicated market data. Despite the quantity and type of information the former employee appropriated, the court determined that the information was not a trade secret under the six factors. *Id.* at 292–98, 325 N.W.2d 883. In the instant case, the information is similar to that which was in dispute in *Corroon & Black–Rutters.* We therefore conclude that the confidential customer information was not a trade secret pursuant to section 134.90. Paragraph three does not contain a durational limitation on the dissemination of the customer information. This omission is unreasonable unless the time limitation in paragraph five applies to paragraph three. Nalco characterizes paragraphs as completely different provisions. (Nalco brief at 17). We agree, and therefore the clause is void and unenforceable.

### B. Paragraph five:

■ Paragraph five is indisputably a covenant not to compete.[2] It bars Broge

---

**2.** Paragraph five states in relevant part:
   5) Employee will not, directly or indirectly, during his employment and for the period of two (2) years immediately after its termination, engage or assist in the same or any similar line of business, competing with the line of business now or hereafter conducted or operated by Nalco during the term of Employee's employment by Nalco, whether as consultant, employee, officer, director, or rep-

and Girmscheid from competing for two years in the same or any similar business to Nalco's in the geographic area for which they were responsible immediately preceding their termination. Girmscheid's and Broge's attack on the clause is two-fold. First, that "the same or any similar business conducted or operated by Nalco" encompasses virtually all aspects of water treatment, not merely that conducted by the Watergy division. Second, that the geographic area for which they were responsible is not a reasonable restraint; the G–14 district is large, and the men serviced customers in only a few of the areas within the district.

■ Covenants not to compete are disfavored. *Behnke v. Hertz Corp.*, 70 Wis.2d 818, 821, 235 N.W.2d 690 (Wis.1975). Nonetheless, some covenants are enforceable. To determine if paragraph five is enforceable, we consider whether it 1) is necessary to protect Nalco's legitimate interests; 2) provides a reasonable time restriction; 3) provides a reasonable territorial restriction; 4) is harsh or oppressive to Girmscheid and Broge; and 5) is contrary to public policy. *Pollack v. Calimag*, 157 Wis.2d 222, 236, 458 N.W.2d 591 (Wis.Ct. App.1990).

To resolve this case, we need only consider the clause in paragraph five that addresses the type of business activity from which Broge and Girmscheid are restrained. In *Rollins*, 101 Wis.2d at 465, 304 N.W.2d 752, the Wisconsin Supreme Court indicated that a business activity restraint should be narrowly drawn. The court quoted an oft-cited law review article stating that because divisions of labor and specializations are increasing, business activity clauses must be carefully defined. *Id.* (citing Blake, *Employee Agreements Not To Compete*, 73 Harv.L.Rev. 625, 675 (1960)). The disapproval afforded broad restraints of business activity is no secret. In *Estate of Schroeder*, 53 Wis.2d 59, 191

N.W.2d 860 (Wis.1971), the Wisconsin Supreme Court considered a business activity restraint that barred a former transportation company employee from working elsewhere in the transportation industry. The restraint in the case was without geographic or time limitations, and the clause as a whole was found to be unreasonable. The court expressed that the prohibition against working in the entire industry was overbroad. Whether this prohibition alone or the combination of factors rendered the clause unenforceable, the court made clear that the breadth of the activity restraint was unacceptable.

Much like the clause in *Schroeder*, the Nalco clause effectively bars Broge and Girmscheid from working in the water treatment industry. Paragraph five states specifically that Broge and Girmscheid cannot "engage or assist in the same or any similar line of business, competing with the line of business now or hereafter conducted or operated by Nalco during the term of Employee's employment by Nalco...." Nalco is a very large company, engaged in many facets of water treatment. It has a diverse organization of groups and divisions. The Waste and Water Treatment division is but one of twelve. The Watergy group is one of four within that division. (Tr. 33). Other divisions provide chemical products and services to many types of industries. (Tr. 34–38). The parties do not dispute that Girmscheid and Broge did not deal with any of these various enterprises. Therefore, the Nalco restraint exceeds the bounds of reason.

The business activity restraint is overbroad and violates three of the five factors under which noncompetition clauses are analyzed. First, it is much greater than that necessary to protect Nalco's legitimate interests; second, it is both harsh and oppressive to Girmscheid and Broge; and finally, such a broad restraint violates a public policy against barriers to competition.

resentative of such competing business within the United States of America, provided, however, that in the event that the Employee's position with Nalco immediately prior to termination is that of field representative, then the geographic area of the non-competition

covenant shall be limited to the geographic area within the United States of America for which Employee was responsible at any time during the two year period immediately preceding termination....

*Lakeside Oil Co. v. Slutsky,* 8 Wis.2d 157, 166–67, 98 N.W.2d 415 (Wis.1959).

As a final note, paragraph five contains a savings clause that maintains that the covenant not to compete is applicable with reasonable restrictions if the restrictions as originally stated are found by a court to be unreasonable. This modification practice is called "blue penciling" and is prohibited by section 103.465. *Streiff v. American Family Mutual Insurance Company,* 118 Wis.2d 602, 613–14, 348 N.W.2d 505 (Wis. 1984). For that reason paragraph five and paragraph three are void and may not be enforced with otherwise reasonable restrictions.

### III.

The district court decision is REVERSED, the preliminary injunction is VACATED, and the case is REMANDED for entry of judgment in favor of Girmscheid and Broge on any issue regarding breach of paragraphs three and five of the employment agreement. We offer no opinion on any issues not raised in this appeal.