NBZ, INC., d/b/a Studio 890, Plaintiff-Appellant,

v.

Paula PILARSKI, Defendant-Respondent.

Court of Appeals

*No. 93–2219. Submitted on briefs April 26, 1994.—Decided June 8, 1994.*

(Also reported in 520 N.W.2d 93.)

828

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *George N. Kotsonis* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arnold P. Anderson* of *Mohr, Anderson & McClurg, S.C.* of Hartford.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J.   The issues in this case arise from a covenant not to compete executed between NBZ, Inc., doing business as Studio 890—a hairstyling concern—and Paula Pilarski, a former Studio 890 employee. The first issue is whether restrictive covenants in employment contracts, subject to the requirements of § 103.465, STATS., are also subject to common law contract principles requiring that a contract be supported by consideration. We hold that covenants not to compete must be supported by consideration and affirm the trial court on this issue.

The second issue is whether the covenant executed after the start of employment was supported by consideration. We affirm the trial court's findings of fact that no consideration accrued to Pilarski in exchange for signing the covenant.

The third issue is whether Studio 890's appeal was frivolous under RULE 809.25(3), STATS., because it was filed "solely for purposes of harassing or maliciously injuring another." We hold that the appeal was not frivolous.

The facts are as follows. Studio 890 is a beauty salon in Elm Grove, Wisconsin. The salon hired Pilarski on April 17, 1989 and placed her in its training program. While in training, Pilarski was paid a salary based on an hourly wage, ranging from $3.35 to $4.25 an hour. On May 23, 1989, while Pilarski was still in training, Studio 890 and Pilarski executed an

"Employee Agreement and Commitment"[1] and an "Agreement Not to Compete."

The covenant not to compete provided that Pilarski would be restricted for one year after employment termination from competing within a five-mile area of the employer's place of business. The covenant also provided that "it is understood and agreed between Employer and Employee that Employer's customers and customer relations are the most important assets and Employer could not continue to do business without its customers."

Pilarski finished the training program in approximately August 1989 and became a hairstylist at Studio 890. As a hairstylist, Pilarski was either paid 47.5% of the gross revenue generated by her work or, alternatively, a guaranteed salary based on an hourly wage.

Pilarski left the salon's employment on August 21, 1990. On September 4, 1990, Pilarski began working at Henry Steven's Salon, a salon which was started by another former employee of Studio 890. Henry Steven's Salon was within five miles of Studio 890. This other employee had not executed a covenant not to compete.

Studio 890 brought an action against Pilarski for a permanent injunction requiring her to terminate her employment at Henry Steven's Salon. The trial court dismissed the action. The trial court held that under *Behnke v. Hertz Corp.*, 70 Wis. 2d 818, 821, 235 N.W.2d 690, 692 (1975), covenants not to compete must be supported by consideration and that the covenant executed

---

[1] The employee agreement provided that "[e]mployer retains employee and employee accepts full time employment within the business of selling cosmetology services and related products at Studio 890, beginning as of the effective date of this agreement, continuing until employment has been terminated by either party and continuing as hereinafter provides."

in this case was not supported by consideration. The trial court further held that the covenant was not valid under § 103.465, STATS., because it was not reasonably necessary for the protection of the employer.

■

First, we address the issue of whether a covenant not to compete subject to § 103.465, STATS., must be supported by consideration. This issue involves the interpretation of a statute. The interpretation of a statute presents a question of law which we review de novo. *See Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 821, 512 N.W.2d 216, 218 (Ct. App. 1994).

Section 103.465, STATS., sets forth the requirements for an enforceable restrictive covenant in an employment contract but does not address on its face the question of whether a restrictive covenant must be supported by consideration.[2] The common law required restrictive covenants in employment contracts to be supported by consideration. *Durbrow Comm'n Co. v. Donner*, 201 Wis. 175, 178, 229 N.W. 635, 636 (1930). Studio 890 contends that § 103.465 abrogated the common law requirement. Studio 890 further argues that if the legislature had intended consideration to be a requirement, it would have explicitly stated the requirement in this section.

---

[2] Section 103.465, STATS., provides:

A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

We disagree with Studio 890 and hold that covenants not to compete are subject to common law contract principles as well as § 103.465, STATS., requirements. In *Behnke*, 70 Wis. 2d at 821, 235 N.W.2d at 692, our supreme court cited with favor a law review article stating that § 103.465 was "based almost completely upon the pre-existing structure of the common law as established in Wisconsin and elsewhere." *Id.* (citing George A. Richards, *Drafting and Enforcing Restrictive Covenants Not to Compete*, 55 MARQ. L. REV. 241 (1972)). Because *Behnke* addressed the reasonableness of a restrictive covenant and not the issue of whether there was a contract in the first place, we read *Behnke* as persuasive but not as resolving this issue. Furthermore, our independent research did not reveal any case law reaching the issue.

The plain meaning of this statute does not answer the consideration question; thus, we hold that the statute is ambiguous as to this issue. *See Hainz v. Shopko Stores, Inc.*, 121 Wis. 2d 168, 173, 359 N.W.2d 397, 400 (Ct. App. 1984). Therefore, we turn to canons of statutory construction for guidance. *See id.* The canons of construction provide that a statute does not abrogate any rule of common law unless the abrogation is so clearly expressed as to leave no doubt of the legislature's intent. *Waukesha County v. Johnson*, 107 Wis. 2d 155, 162, 320 N.W.2d 1, 4 (Ct. App. 1982). A statute in derogation of the common law must be strictly construed so as to have minimal effect on the common law rule.[3] *Id.*

---

[3] To apply this rule of construction, three requirements must be met:

We hold that an intent to abrogate the common law is not clearly expressed in § 103.465, STATS. A covenant not to compete is a contract. *See Behnke*, 70 Wis. 2d at 820, 235 N.W.2d at 692. Although § 103.465 does not contain the word "consideration," the section also does not contain the words "offer" and "acceptance." It is hornbook law that "offer," "acceptance" and "consideration" are elements of an enforceable contract. *See* 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS §§ 11, 112 (1963). The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract. *See id.* We do not discern from § 103.465 any legislative intent to abandon the principles by which a contract is formed in the first instance.

Next, we address the second issue of whether the trial court erred when it found that there was no consideration for the execution of the covenant after

---

(1) there must be a common law doctrine in existence, or potentially in existence, relevant to the issue presented by the parties; (2) the statute in issue must be one which, construed as the party pleading it contended, would operate to change the common law; and (3) the statute must be ambiguous on its face.

*Waukesha County v. Johnson*, 107 Wis. 2d 155, 162-63, 320 N.W.2d 1, 4 (Ct. App. 1982). Studio 890 concedes that the first two requirements are satisfied here as follows: (1) prior to the enactment of § 103.465, STATS., the common law required contracts in restraint of trade to be supported by "valuable consideration" and (2) Studio 890's construction of § 103.465 would change the common law requirements. *See Durbrow Comm'n Co. v. Donner*, 201 Wis. 175, 178, 229 N.W. 635, 636 (1930). The third requirement is also met because the statute is ambiguous regarding this question.

employment began.[4] Studio 890 argues that continued employment alone will serve as consideration for a covenant not to compete. However, Studio 890 does not offer any authority for this proposition and our independent research did not reveal any such authority. Thus, we conduct our analysis of this issue under the contract principle that an exchange of promises may constitute consideration for a bilateral contract.[5] *See Ferraro v. Koelsch*, 124 Wis. 2d 154, 164, 368 N.W.2d 666, 671-72 (1985).

The party seeking to avoid a contract has the burden of proving failure of consideration. *Jax v. Jax*, 73 Wis. 2d 572, 586, 243 N.W.2d 831, 839 (1976). Whether consideration supports a contract presents a question of fact. *See Gertsch v. International Equity Research*, 158 Wis. 2d 559, 576, 463 N.W.2d 853, 860 (Ct. App.

---

[4] According to an early Wisconsin case, *Wisconsin Ice & Coal Co. v. Lueth*, 213 Wis. 42, 43-44, 250 N.W. 819, 819-20 (1933), a promise of initial employment is sufficient consideration for a restrictive covenant even if the employment is at will. Timothy A. Nettesheim & Larri J. Broomfield, *Restrictive Covenants and the Wisconsin Service Professional*, WIS. LAW., Feb. 1993, at 20, 21 & 24 n.11. However, here the circuit court found that the covenant was not executed until after employment began and Studio 890 does not contest this finding of fact.

[5] Because we read the circuit court's decision and the parties' arguments to presume a bilateral contract, our analysis here also presumes a bilateral contract. "In a bilateral contract, the promise of each promisor must be bargained for and given in exchange for the other's promise. In a unilateral contract, the performance must be bargained for and given in exchange for the promisor's promise." Kathryn J. Yates, *Consideration for Employee Noncompetition Covenants in Employments at Will*, 54 FORDHAM L. REVIEW 1123, 1128 n.22 (1986) (citations omitted).

1990); *Jax*, 73 Wis. 2d at 586, 243 N.W.2d at 839. We must uphold the trial court's findings of fact unless clearly erroneous. Section 805.17(2), STATS.

We hold that the trial court's findings of fact are not clearly erroneous and support its conclusion that the covenant was not supported by consideration. The trial court found that continued employment was not conditioned on signing the covenant. The trial testimony supports this finding. The president of the corporation testified that during certain time periods the company had a policy to ask employees to sign the restrictive covenants, but at other times the company did not have such a policy, "There has been one, there hasn't been one and then there has been one." The president further testified, "If somebody said I will not sign it, I don't know what I would do. I never had anyone do that."

Furthermore, Pilarski was still in training at the time of signing the covenant. Thus, there is no indication that a change of status from trainee to hairstylist served as consideration for Pilarski's promise and we do not address whether a change of status alone would serve as consideration. We hold that the evidence does not show that Studio 890 conditioned employment or promised to do anything in exchange for Pilarski's signing the covenant. Therefore, we affirm the trial court's finding of no consideration.

Having decided that the covenant fails under common law contract analysis, we need not address the § 103.465, STATS., requirements. However, even if we were to reach the issue of whether the covenant satisfies the statutory requirements, we would be hard pressed to hold that the covenant was valid. Under § 103.465, the court's first inquiry is whether the cove-

nant was reasonably necessary to protect the employer.[6] *Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 470, 309 N.W.2d 125, 128 (Ct. App. 1981). Whether the covenant is reasonably necessary to protect the employer depends on the totality of the circumstances and is a question of law to be resolved on the basis of factual findings. *Id.* at 473, 309 N.W.2d at 130. "[T]o enforce a restraint, the employee must present a substantial risk either to the employer's relationships with his customers or with respect to confidential business information." *Id.* at 471, 309 N.W.2d at 129 (quoted source omitted). The employer has the burden of proving the reasonable necessity of the restrictive covenant. *Geocaris v. Surgical Consultants, Ltd.*, 100 Wis. 2d 387, 388, 302 N.W.2d 76, 77 (Ct. App. 1981).

Here, the trial court found that Studio 890 did not execute restrictive covenants in a systematic manner and that Pilarski's relationships with Studio 890 customers, representing 2% of the gross revenue of the salon, did not pose a substantial risk to the employer's relationships with its customers. Furthermore, the evidence does not show that Pilarski's new employment at Henry Steven's Salon rendered Studio 890 unable to compete. We agree with the trial court that, under the totality of the circumstances, Studio 890 did not show that the restrictive covenant with Pilarski was reasonably necessary to protect its interests.

---

[6] Case law has distilled the following five requirements from the statute: "The covenant must (1) be necessary for the protection of the employer; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy." *Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 470, 309 N.W.2d 125, 128 (Ct. App. 1981).

Pilarski asks us to find Studio 890's appeal frivolous under RULE 809.25(3), STATS. We decide as a matter of law whether an appeal is frivolous. *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 225, 474 N.W.2d 756, 760 (Ct. App. 1991). Under RULE 809.25(3), to find an appeal frivolous we must find that the appeal (1) was filed in bad faith for the sole purpose of harassing or maliciously injuring another or (2) is without any reasonable basis in law or equity.

Pilarski claims that Studio 890 maintains this appeal solely to harass her because it could not pursue a claim against a former employee—the person who trained her at Studio 890 and who took Pilarski with him when he left. He did not execute a covenant not to compete. Pilarski contends that she was the "victim of a vendetta."

Initially, we note that Pilarski did not raise a corresponding argument under § 814.025(3)(a), STATS., to the trial court that Studio 890 commenced or continued the action in "bad faith, solely for purposes of harassing or maliciously injuring another." *See id.* RULE 809.25(3), STATS., does not on its face prohibit a successful motion for frivolous appeal on the basis of bad faith where the party has not also brought a motion under § 814.025 on the basis of bad faith. However, we are precluded from resolving factual issues and must look to the appellate record to determine whether Studio 890 maintains this appeal in bad faith. *See Tomah-Mauston Broadcasting Co. v. Eklund*, 143 Wis. 2d 648, 659, 422 N.W.2d 169, 173 (Ct. App. 1988). We hold that the record does not provide a basis for Pilarski's conclusory allegations of Studio 890's intent to harass her during this appeal.

Our independent research of Wisconsin case law does not reveal a procedure where an intent to harass in maintaining an appeal is alleged, but where an intent to harass at the trial court level was not also alleged. We also do not find case law from other states helpful. However, the United States Courts of Appeal have taken various approaches to the issue of an appellant's bad faith in maintaining an appeal.

For instance, where the appellate record reveals a "clear showing" that the appeal was maintained for purposes of delay with benefit to the appellant, the Courts of Appeal have held that the appeal was taken in bad faith. *Compare West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir.) (holding that in cases of frivolous appeals under FED. R. APP. P. 38[7] and 28 U.S.C. § 1912[8] the imposition of sanctions requires a clear showing of bad faith), *cert. denied*, 404 U.S. 871 (1971), *with United States v. Santa Fe Engineers, Inc.*, 567 F.2d 860, 861 (9th Cir. 1978) (holding that where the appellate brief contained twenty-three allegations of error in an attempt to retry factual issues in the appellate forum, the appellant maintained the appeal for purposes of delay to avoid obligations under a contract). Similarly, where an appellant has asserted "blatantly baseless arguments," the Second Circuit has held that the appeal was interposed for the purposes of harassment and delay. *Hastings v. Maine-Endwell*

---

[7] Rule 38 provides: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." FED. R. APP. P. 38.

[8] 28 U.S.C. § 1912 (1994) provides: "Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."

*Cent. Sch. Dist.*, 676 F.2d 893, 897-98 (2d Cir. 1982). Furthermore, reckless mis-citation to the record may constitute evidence of a lack of good faith. *Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985). Here, there is no showing in the appellate briefs or the appellate record of any such purpose of delay for Studio 890's benefit, any blatantly baseless arguments, or reckless conduct.

The Second Circuit has also inferred bad faith in maintaining an appeal when the record contains uncontroverted facts showing bad faith in the bringing of the lawsuit and the district court has made findings of fact about bad faith shown during the pretrial and trial process. *See Fox v. Boucher*, 794 F.2d 34, 38 (2d Cir. 1986). Thus, an appellate court may reasonably infer that a lawsuit commenced and pursued in bad faith is also maintained upon appeal in bad faith. *See id.* Here, we cannot conclude from uncontroverted facts that Studio 890 commenced this lawsuit in bad faith. Further, the trial court did not make findings of fact about bad faith in bringing the action because Pilarski did not bring a motion under § 814.025, STATS.

There may be a case where we might remand for fact-finding on bad faith under RULE 809.25(3), STATS.—for instance, when a party alleges bad faith conduct occurring after trial and during the appeal. However, here, Pilarski has not alleged any bad faith conduct on the part of Studio 890 that she could not have raised before the trial court in a § 814.025, STATS., motion. Therefore, we hold that the bad faith issue in the context of this entire litigation is not supported by the appellate record.

*By the Court.*—Judgment affirmed.