PROCHNIAK, Respondent, vs. WISCONSIN SCREW COMPANY,
Appellant.*

*December 4—December 30, 1953.*

* Motion for rehearing denied, with $25 costs, on March 2, 1954.

542

For the appellant there was a brief by *Weisman & Weisman* of Racine, and oral argument by *J. M. Weisman.*

For the respondent there was a brief by *George R. Simanek* and *Vilas H. Whaley,* both of Racine, and oral argument by *Mr. Whaley.*

MARTIN, J.  The facts outlined above are not in dispute. There is no question that plaintiff was employed by defendant as a sales representative on a commission basis. The testimony is in sharp conflict, however, as to whether such agreement provided no commissions should be paid plaintiff on unfilled orders from his territory at the time his employment was terminated.

Witnesses on behalf of the defendant testified that plaintiff was told at the time he was first put on a commission basis that he would not be paid any commissions on orders that were delivered and paid for after termination of his employment, since such was the established policy of the company and the custom of the trade of screw machine companies throughout the area. It is contended that such statement was again made to the plaintiff at the meeting in January, 1950, when the new commission arrangement was entered into. Plaintiff denies that such statements were ever made to him.

Plaintiff's testimony is that the agreement provided he would be paid his commissions on all orders obtained by him in his territory. He was asked:

"*Q*. Isn't it a fact that at that time they told you that they were giving you a chance to service these accounts on a commission basis but that the understanding was that in the event your employment terminated for any cause your commissions would be paid only to the time of the termination of your employment? *A*. That is not a fact."

Mr. Susnar, defendant's witness on adverse examination, was asked whether, under their arrangement, plaintiff was "to receive a commission, whatever that might be, on orders that were filled and delivered by your company and paid for" and he answered, "That is right. . . ." Referring to the meeting of January, 1950, when the new commission agreement was entered into, Mr. Kotlarek, the sales manager, was asked:

"*Q*. Was anything said at that time about Mr. Prochniak losing his commissions if his services were discontinued in the company? *A*. At no time was there a discussion as to who is going to lose a commission.

"*Q*. That was never discussed in that conference? *A*. No, sir."

Defendant attempted to show that it was the policy of the company not to pay commissions on orders filled after termination of employment. In support of that contention it offered the testimony of Mrs. Marvel Smith, its bookkeeper, who stated that while she worked for the company a number of salesmen left its employ and during that time the company never paid commissions to any of them for a backlog after termination of employment. This testimony is very weak to establish the policy of the company, and the jury had a right to disregard it.

It is also argued that it is the general custom of the trade not to pay commissions after termination of employment, but the cases cited by defendant are not helpful since they simply hold that testimony as to custom is admissible and can be considered by the jury. Such testimony was admitted in this case, but the jury apparently disregarded it, as it had a right to do.

Another reason advanced by defendant for not paying commissions on orders filled after plaintiff's termination of employment was that his work involved more than merely taking orders. "Servicing" required him to call on the accounts, pick up blueprints and bring them into the shop for the purpose of analyzing the job and estimating the price. When blueprints were mailed directly to the shop, it was plaintiff's duty to channel them to the engineering department to determine the price to be quoted, and the price quotation would either be mailed to the customer or submitted by the plaintiff in person. Obviously, this much of the servicing had to be done before the order was obtained.

In addition, plaintiff was to keep in contact with the customer, check with him on the co-ordination of deliveries and conformity of items with the customer's specifications, take care of the customer's complaints, if any, and generally keep him satisfied. No proof is offered, however, that any such servicing of plaintiff's orders was done by someone else after he left the company, although the record shows that all orders procured by him had been filled and paid for by the time this case was tried.

It was defendant's burden to convince the jury that the contract provided no commissions were payable on orders not filled at the termination of plaintiff's employment. It was a disputed question and the jury had the right to believe plaintiff's testimony that the contract provided he was to

have his commissions on all orders so long as they were placed during his term of employment.

In Anno. 65 A. L. R. 994, it is stated:

". . . in *Singer Mfg. Co. v. Brewer* (1906), 78 Ark. 202, 93 S. W. 755, where a contract of employment provided that the agent should receive a stipulated percentage upon all sales and leases, although it was further provided that 'this commission shall be payable only as payments in cash are made on said sales and leases, and paid over to said company,' it was held that the agent was entitled to commissions on all sales made during his period of service, although the collections thereon were not made until after his discharge. This result was reached upon the ground that the commissions were earned at the time the sales were effected, and that the provision relating to collections merely postponed their payment. With reference to a clause of the contract providing that all claims of the agent to commissions 'shall cease immediately upon the termination of this agreement,' it was said: 'The language referred to must be construed to mean, not that compensation already earned should be forfeited, but that either party should have the right to terminate the contract at any time and stop the earning of further compensation, and that, upon such termination, no further compensation should be claimed except that stipulated in the contract and already earned at that time.' "

Defendant further contends that question 1 of the special verdict was confusing and misleading in that it was submitted in negative form. In our opinion, the negative form of the question tended to favor the defendant rather than the plaintiff, but in any event the record reveals that defendant approved the form of the questions submitted and cannot now complain. *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 34 N. W. (2d) 116.

On the second question presented, we consider that the evidence amply supports the jury's finding that the defendant canceled overdrafts by plaintiff on his drawing account

in the sum of $805.09. As stated above, the record shows that when the company's books were closed after November 30, 1949, that amount was removed from the books as an indebtedness of the plaintiff and placed in the profit-and-loss statement; it was listed as company expense on defendant's income-tax return for 1949. Defendant explains this as a "mistake," but the testimony of the bookkeeper and the sales manager shows that the indebtedness was in fact wiped out. According to the testimony of Mr. Kotlarek, who was present at the meeting in January, 1950, when plaintiff entered into the new commission agreement with defendant, the matter of the overdraft was discussed and it was agreed that the indebtedness would be canceled; it was recognized that the original commission agreement was not adequately compensating plaintiff, and the defendant agreed to the new arrangement for higher commissions as an inducement to secure a larger volume of business. Plaintiff's agreement to continue working for defendant under an arrangement whereby the overdraft would be wiped out and higher commissions would be paid is sufficient consideration for cancellation of the debt. The trial court properly held that it was, and entered judgment on the verdict for the plaintiff, including the $805.09 item.

Both questions presented on this appeal were purely within the province of the jury to decide on evidence which was conflicting, and the findings of the jury must stand. *Trautmann v. Charles Schefft & Sons Co.* (1930), 201 Wis. 113, 228 N. W. 741.

*By the Court.*—Judgment affirmed.