# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1392 |
| COMPLETE TITLE: | Runzheimer International, Ltd., |
| |       Plaintiff-Appellant, |
| |    v. |
| | David Friedlen and Corporate Reimbursement |
| | Services, Inc., |
| |       Defendants-Respondents. |

---

ON CERTIFICATION FROM THE COURT OF APPEALS

---

| | |
|---|---|
| OPINION FILED: | April 30, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 1, 2014 |

---

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | William W. Brash |

---

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion Filed.) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

---

ATTORNEYS:

For the plaintiff-appellant, there were briefs by *Michael B. Apfeld*, *Michael D. Huitnik*, *Erin M. Cook*, and *Godfrey & Kahn, S.C.*, Milwaukee. Oral argument by *Michael B. Apfeld*.

For the defendants-respondents (in the court of appeals), there was a brief filed *Daniel D. Barker*, *Tony H. McGrath*, and *Jeffrey M. Rosin*, and *Constangy, Brooks and Smith LLP*, Madison. Oral argument by *Jeffrey M. Rosin*.

An amicus curiae brief was filed by *James A. Buchen* and *Andrew C. Cook* on behalf of Wisconsin Manufacturers and Commerce and the Wisconsin Civil Justice Council, Inc.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1392
(L.C. No. 2012CV859)

STATE OF WISCONSIN : IN SUPREME COURT

Runzheimer International, Ltd.,

       Plaintiff-Appellant,

    v.

David Friedlen and Corporate Reimbursement Services, Inc.,

       Defendants-Respondents.

**FILED**

**APR 30, 2015**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from a final judgment of the Circuit Court for Milwaukee County, William W. Brash, III, Judge. *Reversed and cause remanded.*

¶1 DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2011-12).[1] It requires us to examine the enforceability of a restrictive covenant signed by an existing at-will employee.

_____

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶2    David Friedlen (Friedlen) had worked for Runzheimer International, Ltd. (Runzheimer) for more than fifteen years when Runzheimer required all of its employees, including Friedlen, to sign restrictive covenants.  Runzheimer gave Friedlen two weeks to review the covenant, after which Friedlen was required to sign it or be fired.  Friedlen chose to sign the covenant and continued to work for Runzheimer for more than two years before being terminated in 2011.  Friedlen then sought employment at Corporate Reimbursement Services (CRS), one of Runzheimer's competitors.

¶3    Runzheimer sued both Friedlen and CRS, alleging that Friedlen's employment at CRS constituted a breach of the restrictive covenant.  Friedlen and CRS moved for summary judgment on Runzheimer's claims on grounds that the covenant was unenforceable because it lacked consideration.  The Milwaukee County Circuit Court[2] initially denied the motion.  The parties then conducted additional discovery, Runzheimer filed an amended complaint, and Friedlen and CRS again moved for summary judgment.  This time the court granted summary judgment against three of Runzheimer's four claims.  The court ruled that Runzheimer's promise not to fire Friedlen immediately if he signed the restrictive covenant was an illusory promise and did not constitute consideration to support the agreement because Runzheimer retained "the unfettered right to discharge Friedlen

---

[2] The Honorable William W. Brash, III, presiding.

at any time, including seconds after Friedlen signed the Agreement."

¶4   Runzheimer appealed, and the Wisconsin Court of Appeals certified the case to this court.  In its certification, the court explained that Wisconsin law fails to adequately address whether an employer's forbearance of its right to terminate an existing at-will employee in exchange for the employee agreeing to a restrictive covenant constitutes lawful consideration.[3]

¶5   We hold that an employer's forbearance in exercising its right to terminate an at-will employee constitutes lawful consideration for signing a restrictive covenant.  Although, theoretically, an employer could terminate an employee's employment shortly after having the employee sign a restrictive covenant, the employee would then be protected by other contract formation principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced.

¶6   In this case, the circuit court made no determination as to the reasonableness of the covenant's terms.  Because the record and arguments before us are undeveloped on the issue of reasonableness, we decline to address it.  Accordingly, we reverse the decision of the circuit court and remand the cause

---

[3]  For purposes of clarity, we use the term "lawful consideration" instead of "sufficient consideration" to differentiate the existence of consideration from the adequacy of consideration.

to that court for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶7  Friedlen was an at-will employee at Runzheimer, a Wisconsin corporation that provides "a range of employee mobility services relating to business vehicles, relocation, travel management, corporate aircraft, and virtual office programs."  Runzheimer hired Friedlen in 1993 as a Business Development Consultant.  Friedlen worked primarily in this role for Runzheimer, except from 2001 to 2006 when he worked in different capacities.  Friedlen participated in Runzheimer's Incentive Plan each year, irrespective of his position, starting with the year he was hired.  Runzheimer's Incentive Plan consisted of bonuses based on a percentage of sales in the employee's territory.  Runzheimer reviewed the Plan annually and adjusted it for sales targets.

¶8  In 2009 Runzheimer required all employees to sign a restrictive covenant.  Runzheimer's Director of Business Development, Michael W. Bassi, permitted Friedlen to review the restrictive covenant for two weeks but told him that if he did not sign the agreement by the end of that time, his employment would be terminated.  Friedlen's participation in Runzheimer's Incentive Program also was contingent on his signing the restrictive covenant.

¶9  The restrictive covenant included the following terms:

> 1. Confidentiality Obligations.  . . .  After the
> end, for whatever reason, of Employee's [Friedlen's]

4

employment with the Company [Runzheimer], Employee will not directly or indirectly use or disclose any Trade Secret of the Company. For a period of 24 months following the end, for whatever reason, of Employee's employment with the Company, Employee will not directly or indirectly use or disclose any Confidential Information of the Company. Nothing in this Agreement shall prevent Employee, after the end of employment with the Company, from using general skills and knowledge gained while employed by the Company.

. . . .

4. Post-Employment Non-Solicitation of Restricted Customers. For 24 months following the end, for whatever reason, of Employee's employment with the Company, Employee agrees not to directly or indirectly sell or attempt to sell to any Restricted Customers any goods, products or services of the type or substantially similar to the type Employee sold, marketed, produced or supported on behalf of the Company during the 12 months prior to the end of the Employee's employment with the Company.

5. Post-Employment Restricted Services Obligation. For 24 months following the end, for whatever reason, of Employee's employment with the Company, Employee agrees not to directly or indirectly provide to any Competitor Restricted Services or advice or counsel concerning the provision of Restricted Services in the geographic area in which, during the 12 months prior to the end of the Employee's employment with the Company, Employee provided services or assisted any Company employee or agent in the provision of services to or on behalf of the Company.

¶10 Friedlen signed the restrictive covenant on June 15, 2009. He received more than $20,000 in 2009 from Runzheimer's Incentive Plan in addition to his regular compensation. Runzheimer employed Friedlen for 29 months after he signed the

restrictive covenant. On November 16, 2011, however, Runzheimer terminated Friedlen's employment.[4]

¶11 Following his termination, Friedlen reached out to CRS. CRS is a competitor of Runzheimer, as both corporations administer services for employers to utilize Internal Revenue Service guidelines to determine how employers can reimburse employees without tax consequences for the business use of the employees' personal vehicles. Friedlen retained independent counsel to review the restrictive covenant and determine its enforceability. Friedlen's independent counsel opined that the restrictive covenant was not enforceable. CRS then offered Friedlen a position, which he accepted on December 14, 2011. He began work for CRS on January 2, 2012.

¶12 On January 18, 2012, Runzheimer sent Friedlen a letter demanding his compliance with the restrictive covenant. Friedlen ignored Runzheimer's demand because he believed the restrictive covenant was unenforceable. Consequently, Runzheimer filed a complaint against Friedlen and CRS on January 20, 2012, alleging: (1) Friedlen breached the restrictive covenant, (2) Friedlen misappropriated Runzheimer's trade secrets, and (3) CRS tortiously interfered with the restrictive covenant.

---

[4] The reason for this termination is not at issue; Friedlen concedes that Runzheimer's termination of his employment was legal.

¶13 On February 16, Friedlen and CRS filed a motion seeking dismissal (or, alternatively, summary judgment) of Runzheimer's claims. They argued that the restrictive covenant was unenforceable because it lacked consideration. The Milwaukee County Circuit Court, William W. Brash, III, Judge, denied the motion, with some hesitation, because of material questions of fact about consideration.

¶14 On November 5, 2012, after conducting additional discovery, Runzheimer filed an amended complaint that included an additional claim of common law misappropriation of confidential information against both Friedlen and CRS and a claim of tortious interference with prospective business relationship, also against both defendants. On November 15, Friedlen and CRS again moved for summary judgment on all claims.

¶15 On May 14, 2013, the circuit court granted the defendants' motion on all claims except the misappropriation claim. In explaining its ruling on Runzheimer's breach of contract claim, the court stated, "Runzheimer made an illusory promise of continued employment to Friedlen. Such a promise cannot constitute consideration for the Agreement. The fact that Friedlen continued his employment with Runzheimer for years after the Agreement does not change the analysis."

¶16 The court determined that Wisconsin law does not adequately address whether continued employment of an existing at-will employee is lawful consideration supporting enforcement of a restrictive covenant. Nevertheless, the court stated that its ruling was consistent with the Wisconsin Court of Appeals'

7

analysis of employment-at-will situations, as well as this court's opinions on consideration in restrictive covenants.

¶17 All parties stipulated to dismissal of the remaining claims against CRS and Friedlen with prejudice, and an order for dismissal was filed on June 4, 2013. Runzheimer then appealed on June 19. The court of appeals thereafter certified the case for our review, asking us whether "consideration in addition to continued employment [is] required to support a covenant not to compete entered into by an existing at-will employee." We accepted the certification on June 12, 2014.

## II. DISCUSSION

### A. Standard of Review

¶18 This case requires us to review the circuit court's decision granting summary judgment. "We review a decision on a motion for summary judgment independently, employing the same methodology as the circuit court." Estate of Genrich v. OHIC Ins. Co., 2009 WI 67, ¶10, 318 Wis. 2d 553, 769 N.W.2d 481. Restrictive covenants are contracts, the interpretation of which is a matter of law that we review de novo. Star Direct, Inc. v. Dal Pra, 2009 WI 76, ¶18, 319 Wis. 2d 274, 767 N.W.2d 898.

¶19 "Wisconsin courts treat contracts concerning employment like any other contract," including agreements between employers and at-will employees formed subsequent to hiring that supplant or modify the original employment relationship. Tinder v. Pinkerton Sec., 305 F.3d 728, 734 (7th Cir. 2002) (citing Ferraro v. Koelsch, 124 Wis. 2d 154, 368 N.W.2d 666 (1985)). A covenant not to compete is such a

8

contract.  NBZ, Inc. v. Pilarski, 185 Wis. 2d 827, 837, 520 N.W.2d 93 (Ct. App. 1994) (citing Behnke v. Hertz Corp., 70 Wis. 2d 818, 820, 235 N.W.2d 690 (1975)).

¶20 The elements of an enforceable contract are offer, acceptance, and consideration.  Rosecky v. Schissel, 2013 WI 66, ¶57, 349 Wis. 2d 84, 833 N.W.2d 634.  "The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract."  NBZ, 185 Wis. 2d at 837 (citing 1 Arthur Linton Corbin, Corbin on Contracts §§ 11, 112 (1963)).

¶21 We have defined consideration as "a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor . . . .  Neither the benefit to the promisor nor the detriment to the promisee need be actual."  See First Wis. Nat'l Bank v. Oby, 52 Wis. 2d 1, 5, 188 N.W.2d 454 (1971) (quoting 1 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts §§ 102, 102A (3d ed. 1957)); see also  Hardscrabble Ski Area v. First Nat'l Bank, 42 Wis. 2d 334, 344, 166 N.W.2d 191 (1969).  Additionally, "a promise for a promise, or the exchange of promises, will constitute consideration to support any contract of [a] bilateral nature."  Ferraro, 124 Wis. 2d at 164 (citations omitted).

B. Legal Background

¶22 We have previously addressed whether an employer's requirement that an at-will employee sign a restrictive covenant as part of the hiring contract constitutes lawful consideration.

See <u>Wis. Ice & Coal Co. v. Lueth</u>, 213 Wis. 42, 43, 250 N.W. 819 (1933).[5] In <u>Lueth</u>, we explained that such an agreement does not fail for lack of lawful consideration even though the employer is free to terminate the employment relationship at any time. <u>Id.</u> at 44.

¶23 Runzheimer would have us rule that a similar agreement between an employer and an <u>existing</u> at-will employee does not lack lawful consideration either. Runzheimer argues that existing at-will employees who are required to sign a restrictive covenant should not be treated differently from new at-will employees because in both cases the employer is promising employment in exchange for the employee's signing of the covenant. In addition, both the employer and employee are as free to terminate the employment relationship at the start of employment as they are several years later. Accordingly, Runzheimer argues, a promise of continued employment that an employer makes to an existing at-will employee in exchange for the employee's signing of a restrictive covenant constitutes lawful consideration.

¶24 Friedlen differentiates the circumstances surrounding the creation of an at-will employment relationship from the circumstances surrounding an existing at-will employment relationship. He argues that at the beginning of the relationship, both parties experience numerous detriments and

---

[5] See also <u>Eureka Laundry Co. v. Long</u>, 146 Wis. 205, 131 N.W. 412 (1911), for extended discussion of the issue.

benefits.    For example, at the beginning of the relationship, employers expend resources on workers' compensation, unemployment insurance, and compliance with state and federal employment laws.    Employers also provide a new employee with "access to the employer's facility, business information, experience, training and compensation."    Friedlen argues that this exchange of benefits to the employee and detriments to the employer at the beginning of the relationship supports a restrictive covenant with lawful consideration.

¶25 However, Friedlen argues, there is not a similar exchange of benefits or detriments when an employer presents a restrictive covenant to an existing at-will employee in return for continued employment.    Friedlen contends that a promise of continued employment does not alter the situation of either the employer or employee, except that the employee is now subject to a restrictive covenant.    Thus, Friedlen concludes, a restrictive covenant lacks lawful consideration unless the employer offers the employee something in addition to promising continued employment.[6]

¶26 Runzheimer appears to minimize the vulnerable position of an employee who has worked for the same employer for a number of years.    The employee may develop specialized skills and

---

[6] Some examples of what may suffice as additional consideration in states that require it include "increased wages, a promotion, a bonus, a fixed term of employment, or perhaps access to protected information." Labriola v. Pollard Group, Inc., 100 P.3d 791, 794 (Wash. 2004) (en banc).

knowledge that would transfer smoothly to an equivalent position for another employer——except for the newly established restrictive covenant. These skills and knowledge may not transfer so easily when a new position involves a different line of work. Moreover, the employee may have grown much older and acquired family responsibilities not present when the employee was hired. The inability to transfer easily to an equivalent job may reduce the employee's bargaining power to negotiate a raise or bonus with the initial employer and may prevent the employee from terminating the employment relationship on his own timetable. By contrast, an employee at the beginning of the employment relationship is likely to have more freedom to find alternative employment because he or she may not be burdened with some of these restraints.

¶27 Given these different circumstances, we decline to rely exclusively on our holding in Lueth to conclude that an employer's forbearance of its right to terminate an at-will employee constitutes lawful consideration. Instead, we believe a deeper analysis is required.

## C. NBZ and Star Direct

¶28 Two cases closely related to this case are NBZ and Star Direct. Both NBZ and Star Direct involved restrictive covenants for at-will employees. Runzheimer utilizes these two cases to argue that neither this court nor the Wisconsin Court of Appeals has ruled that forbearance of the right to terminate an at-will employee does not constitute lawful consideration for a restrictive covenant. Friedlen, on the other hand, argues

that NBZ is not dispositive of the issue but that our holding in Star Direct provides a ruling in his favor.  The parties' conflicting reliance on these two cases suggests that an explanation of their holdings is necessary to clarify Wisconsin law.

¶29  In NBZ, the court of appeals addressed whether lawful consideration exists if an employer does not condition an existing at-will employee's continued employment on signing a restrictive covenant.  NBZ, 185 Wis. 2d at 833.  Studio 890, a beauty salon in Elm Grove, Wisconsin, required its employee, Paula Pilarski, to sign a covenant not to compete while she was in training.  Id. at 833-34.  About one year later, Pilarski left the salon and began working for one of Studio 890's competitors. Id. at 834.

¶30 Studio 890 sued Pilarski, seeking a permanent injunction which would require her to terminate her employment at the competitor's salon.  Id.  The court of appeals first concluded that a covenant not to compete must be supported by consideration, as it is subject to both common law contract principles and the Wisconsin Statutes.[7]  Id. at 836.

---

[7] Wisconsin Stat. § 103.465 addresses restrictive covenants in employment contracts:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of

(continued)

¶31 The court next addressed whether the covenant not to compete was supported by consideration, as Pilarski signed the covenant after her employment began. Id. at 838. The court held that the covenant was not supported by consideration because "the evidence [did] not show that Studio 890 conditioned employment or promised to do anything in exchange for Pilarski's signing the covenant." Id. at 839.

¶32 The holding in NBZ was limited to a determination that a restrictive covenant between an employer and an existing at-will employee lacks consideration when the employer neither conditions the employee's continued employment on signing the covenant nor promises to do anything else in exchange for signing the covenant. This ruling did not affirmatively determine whether lawful consideration would exist if an employer expressly conditioned the existing at-will employee's continued employment on his or her signing a proffered restrictive covenant.

¶33 In Star Direct, this court addressed whether an employer can require new at-will employees to sign restrictive covenants when the employer does not require the same from existing at-will employees. Eugene Dal Pra was a route salesman working for CB Distributors before Star Direct purchased his

the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

14

route. Star Direct, 319 Wis. 2d 274, ¶7. Star Direct, wishing to retain the business on Dal Pra's route, offered to hire him on the condition that he sign a covenant not to compete. Id., ¶¶7-8. After working for Star Direct for about four years, Dal Pra quit and started his own competing company. Id., ¶12. Star Direct sought injunctive relief to prevent Dal Pra from violating his covenant not to compete. Id., ¶13.

¶34 Dal Pra argued that the covenant was unreasonable and unnecessary because Star Direct required only its new employees, not its existing employees, to sign covenants not to compete. Id., ¶49. In response to Dal Pra's allegation, the owner of Star Direct explained that "there was the obvious risk that the current employees would not sign them if asked to, or would leave and begin competing with Star Direct." Id., ¶50.

¶35 We disagreed with Dal Pra that Star Direct's inconsistency amounted to unreasonableness or was unnecessary, as Star Direct's hiring policies following the acquisition of CB Distributors' routes remained consistent and proved that Star Direct legitimately feared the possibility that the new employees would later pose competitive risks. Id., ¶51. In reaching our conclusion, we cited NBZ for the principle that "employers may not compel their existing employees to sign restrictive covenants without additional consideration." Id., ¶50 (citing NBZ, 185 Wis. 2d at 837-39). However, the Star Direct decision did not explain what would constitute "additional consideration."

15

¶36 Based on the quoted statement in Star Direct, Friedlen would like us to conclude that we have already addressed whether forbearance of the right to terminate an at-will employee is lawful consideration. According to Friedlen, our ruling in Star Direct demonstrates that an employer's promise of continued employment is not additional consideration. The circuit court ultimately read Star Direct as saying that an employer's promise of continued employment meant nothing because an at-will employee can be terminated at will.

¶37 Friedlen's reliance on these cases is flawed. NBZ tells us that no consideration exists when there is no evidence to show that the employer conditioned employment or promised to do anything in exchange for the employee's signing the covenant. NBZ, 185 Wis. 2d at 839. Star Direct simply does not address whether an employer's promise not to terminate the employment relationship satisfies the "additional consideration" requirement it describes. Therefore, Friedlen's contention that we have already ruled on this issue is incorrect.

D. Application of Legal Principles

¶38 Jurisdictions throughout the country are split on whether forbearance of the right to terminate an at-will employee is lawful consideration for an employee's promise to forego certain rights. However, the jurisdictions that hold that a promise not to fire is not lawful consideration for a covenant not to compete represent the "distinct minority." Simko, Inc. v. Graymar Co., 464 A.2d 1104, 1107 (Md. Ct. Spec. App. 1983).

16

¶39 Jurisdictions that rule forbearance of the right to terminate an at-will employee is lawful consideration, on the other hand, typically reason that employees are obtaining the expectation of continued employment, which is not worthless or illusory.[8] The American Law Institute embraces this view. See Restatement (Third) of Employment Law, Proposed Final Draft § 8.06 cmt. e (2014) ("Continuing employment of an at-will employee is generally sufficient consideration to support the enforcement of an otherwise valid restrictive covenant.").

¶40 In Wisconsin, "[f]orbearance in exercising a legal right is valid consideration . . . ." Lovett v. Mt. Senario

---

[8] See, e.g., Lucht's Concrete Pumping, Inc. v. Horner, 255 P.3d 1058, 1059-60 (Colo. 2011) (en banc); Summits 7, Inc. v. Kelly, 886 A.2d 365, ¶20 (Vt. 2005) ("In either case, the employee is, in effect, agreeing not to compete for a given period following employment in exchange for either initial or continued employment."); Lake Land Emp't Grp., LLC v. Columber, 804 N.E.2d 27, ¶19 (Ohio 2004) ("Where an employer makes such a proposal by presenting his employee with a noncompetition agreement and the employee assents to it, thereby accepting continued employment on new terms, consideration supporting the noncompetition agreement exists."); Camco, Inc. v. Baker, 936 P.2d 829, 832 n.7 (Nev. 1997) (per curiam) ("Courts have concluded that in an at-will employment context 'continued employment' is, as a practical matter, equivalent to the employer's 'forbearance to discharge'; many courts have concluded that the consideration is equally valid phrased as a benefit to the employee or a legal detriment to the employer."); Ackerman v. Kimball Int'l, Inc., 652 N.E.2d 507, 509 (Ind. 1995); Hogan v. Bergen Brunswig Corp., 378 A.2d 1164, 1167 (N.J. App. Div. 1977) (per curiam); Sherman v. Pfefferkorn, 135 N.E. 568, 569 (Mass. 1922). Contra Labriola, 100 P.3d at 793; Poole v. Incentives Unlimited, Inc., 548 S.E.2d 207, 209 (S.C. 2001); Freeman v. Duluth Clinic, Ltd., 334 N.W.2d 626, 630 (Minn. 1983); Kadis v. Britt, 29 S.E.2d 543 (N.C. 1944).

17

Coll., Inc., 154 Wis. 2d 831, 837, 454 N.W.2d 356 (Ct. App. 1990) (citing Hammel v. Ziegler Fin. Corp., 113 Wis. 2d 73, 81, 334 N.W.2d 913 (Ct. App. 1983)). Accepting this principle, the question remains: is promising not to fire an existing at-will employee in exchange for the employee immediately signing a restrictive covenant a valid example of "forbearance in exercising a legal right?" If so, then the restrictive covenant Friedlen signed is supported by lawful consideration.

¶41 Wisconsin has long recognized the employment-at-will doctrine. See Prentiss v. Ledyard, 28 Wis. 131, 133 (1871). Under the employment-at-will doctrine, an employer has the right to "discharge an employee 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong.'" Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 567, 335 N.W.2d 834 (1983) (citation omitted).

¶42 Wisconsin has an exception to the at-will doctrine that provides employees with a cause of action "for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." Id. at 573. A "narrowly circumscribed public policy exception" to the at-will doctrine is in the interest of the public, employers, and employees because it simultaneously protects the mobility of the workforce while recognizing employers' need to adapt to changing economic conditions. Id. at 574.

¶43 One way an employer may respond to changing economic conditions is to reduce the risk that former employees will compete and take business from the company. Many employers

18

require employees to sign restrictive covenants to ameliorate this risk. Restrictive covenants are enforceable in Wisconsin as long as the restrictions are reasonable. See Wis. Stat. § 103.465.

¶44 Thus, if Friedlen had not signed the restrictive covenant and Runzheimer had fired him as a result, the firing would not have fallen under Wisconsin's public policy exception. However, Runzheimer did not exercise its right to terminate Friedlen's employment. Instead, Runzheimer exchanged its right to fire Friedlen for Friedlen's promise not to compete with Runzheimer upon his leaving the company.

¶45 Friedlen argues that Runzheimer's promise not to fire him was illusory. A contract is illusory when it is "'conditional on some fact or event that is wholly under the promisor's control and his [or her] bringing it about is left wholly to his [or her] own will and discretion . . . .'" Metro. Ventures, LLC v. GEA Assocs., 2006 WI 71, ¶33, 291 Wis. 2d 393, 717 N.W.2d 58 (alteration in original) (quoting Nodolf v. Nelson, 103 Wis. 2d 656, 660, 309 N.W.2d 397 (Ct. App. 1981)). Put another way, "[t]he fundamental element of [an illusory] promise is a promisor's expression of intention that the promisor's future conduct shall be in accord with the present expression, irrespective of what the promisor's will may be when

19

the time for performance arrives."[9]  1 Joseph M. Perillo, Corbin on Contracts § 1.17, at 47 (Rev. ed. 1993) (emphasis added).

¶46 Runzheimer's promise not to fire Friedlen if he signed the covenant was not illusory because it was not a promise implicating Runzheimer's future discretionary conduct.  Rather, Runzheimer's promise was that it would not fire Friedlen at that time and for that reason.  Thus, Runzheimer performed immediately when it forbore its legal right to fire Friedlen at that time.[10]

¶47 An at-will employee has just as much power to terminate the employment relationship as the employer does. Runzheimer promised not to exercise its legal right to end the employment relationship in exchange for Friedlen signing the

---

[9] The prototypical example of an illusory promise is described in Corbin on Contracts: "X guarantees payment of P's note in return for C's written promise to forbear from suing P as long as C wishes to forbear.  In this case C's words may create the illusion of a promise, but in fact, C has made no promise."  1 Joseph M. Perillo, Corbin on Contracts § 1.17, at 47 (Rev. ed. 1993).

[10] This differs from the example in Corbin on Contracts because Runzheimer's decision not to fire Friedlen carried with it the implicit expectation——though not a promise——of continued employment after the restrictive covenant was signed.

The concurring opinion of Chief Justice Abrahamson contends that Runzheimer's promise that it would not fire Friedlen at that time and for that reason if he signed the restrictive covenant is illusory, and that Runzheimer must have promised "not to fire Friedlen without cause for a reasonable period of time."  Concurrence, ¶¶67, 68.  Neither of these contentions is consistent with the majority opinion and they do not represent the majority view.

20

covenant.   Friedlen signed, and the contract was formed.   In fact, we have repeatedly recognized the existence of lawful consideration in the inverse situation——when an at-will employee continues working for the employer in exchange for a modification or addition to the employment agreement.[11]   In these situations, the employer is not getting "additional consideration" for the employee's continued employment, and, in the absence of an employment contract, the employee is still free to leave in the future.

¶48  Moreover, to allow the forbearance of the right to terminate an at-will employee to constitute lawful consideration avoids the temptation for employers to circumvent the law.   If we were to hold that consideration beyond continued employment is necessary in cases like this, an employer might simply fire

---

[11] See Ferraro v. Koelsch, 124 Wis. 2d 154, 168-69 n.5, 368 N.W.2d 666 (1985) (an employee gives lawful consideration for an employer's promise of a raise or bonus when the employee chooses to stay on the job because "[h]e has in effect given up his right to quit, at least temporarily") (citation omitted); Prochniak v. Wis. Screw Co., 265 Wis. 541, 547, 61 N.W.2d 882 (1953) ("[Employee's] agreement to continue working for defendant under an arrangement whereby the overdraft would be wiped out and higher commissions would be paid is sufficient consideration for cancellation of the debt."); see also Tinder v. Pinkerton Sec., 305 F.3d 728, 734 (7th Cir. 2002) ("Wisconsin recognizes that, because at-will employees are free to quit their jobs at any time, at-will employees give adequate consideration for employer promises that modify or supplant the at-will employment relationship by remaining on the job."); Pincus v. Pabst Brewing Co., 893 F.2d 1544, 1549 (7th Cir. 1990) ("[T]he promise of a right of first refusal provided by Pabst [employer] was exchanged for the promise by Pincus [employee] to continue employment under changed circumstances.").

an existing at-will employee and then re-hire the employee the next day with a covenant not to compete. See Curtis 1000, Inc. v. Suess, 24 F.3d 941, 947 (7th Cir. 1994). It is more appropriate for forbearance of the right to fire an existing at-will employee to constitute lawful consideration.

¶49 It is of no consequence that Runzheimer's promise not to fire Friedlen was for an indeterminate period of time because the length of the promise's duration goes to the adequacy of consideration, not the existence of lawful consideration. We have previously stated that we will not address the adequacy of consideration:

> "[A] valuable consideration however small is sufficient to support any contract; . . . inadequacy of consideration alone is not a fatal defect." The law concerns itself only with the existence of legal consideration because "the adequacy in fact, as distinguished from value in law, is for the parties to judge for themselves." A consideration of even an indeterminate value, incapable of being reduced to a fixed sum, can be sufficient to constitute legal consideration.

St. Norbert Coll. Found., Inc. v. McCormick, 81 Wis. 2d 423, 430-31, 260 N.W.2d 776 (1978) (internal citations omitted).

¶50 Therefore, we need not weigh Friedlen's promise not to compete against Runzheimer's promise not to fire him. Lawful

consideration existed, as both parties agreed to give up a legal right.  The inquiry ends there.[12]

## E. Other Principles

¶51 It is true that shortly after Friedlen signed the covenant, Runzheimer could have fired him.  This possibility motivated the circuit court's decision, which reasoned that the potential of Friedlen's immediate firing rendered any purported consideration by Runzheimer "illusory."

¶52 The circuit court erred when it relied on the fear of immediate termination to determine that Runzheimer's promise was

---

[12] We do not necessarily treat new at-will employees exactly the same as existing at-will employees in all circumstances.  A new at-will employee has relatively equal bargaining power to the employer, whereas in an established relationship, the employer often has more bargaining power than the employee due to the employee's reliance on his or her employment income, fringe benefits, and other considerations.

However, in an established employment relationship, the consequences to the employer of an employee's departure to work for a competitor may sometimes be much greater than they would be early in the relationship.  For example, an employer may expend substantial resources over a long period of time to help one of its employees establish personal relationships with clients and potential clients.  If such an employee were not subject to a restrictive covenant, he or she might hold significantly more bargaining power than the employer, as his or her departure to a competitor could severely damage the employer's interests as well as the interests of other employees.

Thus, there is no overriding policy concern that would require substantially greater protections of existing employees than new employees in terms of the consideration required to form an enforceable restrictive covenant.

illusory. Existing contract principles adequately address such a situation.

¶53 First, in First National Bank & Trust Co. v. Notte, 97 Wis. 2d 207, 209, 293 N.W.2d 530 (1980), we stated that "if a party to a contract is induced to manifest his assent to the contract by [] means of a fraudulent or material misrepresentation by another party to the contract, the contract is voidable if the recipient justifiably relies on the misrepresentation." Thus, an employee who relies on an employer's promise that he will not be fired if he signs a covenant not to compete would likely have a voidable contract, subject to rescission, if he were fired shortly after signing.

¶54 Second, an employer acting in such a deceitful manner may be breaching the doctrine of good faith and fair dealing. We have stated that "[e]very contract implies good faith and fair dealing between the parties to it . . . ." Beidel v. Sideline Software, Inc., 2013 WI 56, ¶27, 348 Wis. 2d 360, 842 N.W.2d 240 (quoting Chayka v. Santini, 47 Wis. 2d 102, 107 n.7, 176 N.W.2d 561 (1970)). As we explained in Beidel, Wisconsin disfavors "following the letter but not the spirit of an agreement, and . . . it [is] deemed a violation of the covenant of good faith and fair dealing to do so." Id.

¶55 When an employer promises not to fire an existing at-will employee if the employee agrees to sign a restrictive covenant, the employer violates the spirit of the agreement when the employer fires the employee moments after the employee signs the covenant. Firing the employee moments after the agreement

24

is executed would accomplish "exactly what the agreement of the parties sought to prevent," which constitutes an independent breach, id., ¶28 (citation omitted), and would make the restrictive covenant unenforceable. The modification in the employment relationship when an existing at-will employee signs a restrictive covenant is the restrictive covenant, not a new employment contract of reasonable duration; and it is the modification that would become unenforceable if the employer acts in bad faith.

¶56 Friedlen argues that reliance on contract principles as remedies for misrepresentation or fraud places too heavy a burden on employees. He contends that employees who encounter an employer who obtains a restrictive covenant in bad faith will be required to "engage counsel, bring suit, meet a burden of proof, and obtain the highly unusual remedy of rescission, all at great economic expense." Yet, employees who wish to establish that any restrictive covenant is unlawful must bear the same burden, as the "burden of proving failure of consideration" is on the party seeking to avoid the contract. Jax v. Jax, 73 Wis. 2d 572, 586, 243 N.W.2d 831 (1976). Our determination of what constitutes lawful consideration does not change how contract disputes are litigated.

¶57 Normally, an employer that requires an employee to sign a restrictive covenant does so because the employer believes the employee is valuable and does not want to terminate the employment relationship. Most employees "think it unlikely they will be fired as long as their work is satisfactory and the

25

firm does not encounter rough weather." Curtis 1000, 24 F.3d at 946. As Judge Richard Posner has stated, "Employers pay a price if they get a reputation for tricky dealings with their employees." Id.

¶58 Finally, it is worth noting that Wisconsin law allows for the enforcement of contracts that would otherwise fail for lack of consideration when there has been consideration-in-fact after the formation of the contract. See Oby, 52 Wis. 2d at 8. Thus, although the parties did not argue the case in this way, it is likely that Runzheimer could have prevailed in the circuit court under a theory that Friedlen's actual continued employment for 29 months constituted lawful consideration.

### III. CONCLUSION

¶59 In conclusion, we hold that an employer's forbearance in exercising its right to terminate an at-will employee constitutes lawful consideration for a restrictive covenant. Although, theoretically, an employer could terminate an employee's employment shortly after having the employee sign a restrictive covenant, the employee would then be protected by other contract formation principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced.

¶60 In this case, the circuit court made no determination as to the reasonableness of the covenant's terms. Because the record and arguments before this court are undeveloped on the issue of reasonableness, we decline to address it. We therefore reverse the decision of the circuit court, and remand the cause

26

to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The judgment of the circuit court is reversed and the cause is remanded.

¶61 SHIRLEY S. ABRAHAMSON, C.J. *(concurring)*. The instant case involves a dispute between an employer (Runzheimer International, Ltd.) and one of its former employees (David Friedlen) over the enforceability of a covenant not to compete. The question presented is whether a covenant not to compete between an employer and an existing at-will employee is supported by consideration from the employer.[1]

¶62 When Friedlen signed the covenant not to compete, he had been working for Runzheimer as an at-will employee for over 15 years. Runzheimer did not promise to continue employing Friedlen if he signed the covenant. Rather, Runzheimer informed Friedlen that he would be fired if he chose not to sign the covenant.[2]

¶63 Friedlen signed the covenant not to compete. He was fired roughly two years later.

¶64 The majority opinion holds that Runzheimer provided consideration for Friedlen's signing the covenant not to compete. An internal contradiction, however, pervades the majority opinion and renders its holding ambiguous and troublesome.

¶65 On the one hand, the majority opinion concludes that Runzheimer promised not to "fire Friedlen <u>at that time</u> and <u>for</u>

---

[1] For a discussion of this question, see, <u>e.g.</u>, 1 E. Allan Farnsworth, <u>Farnsworth on Contracts</u> § 2.10(b) (3d ed. 2004).

[2] Majority op., ¶2.

1

that reason." Runzheimer therefore "performed immediately," according to the majority opinion, "when it forbore its legal right to fire Friedlen at that time."[3] In other words, Runzheimer's forbearance from immediately firing Friedlen constituted consideration for Friedlen's signing the covenant not to compete.

¶66 On the other hand, the majority opinion determines that Runzheimer's right to fire Friedlen shortly after having him sign a covenant not to compete was only "theoretical."[4] If Friedlen had been fired shortly after signing the covenant, then according to the majority opinion, Friedlen could have brought suit to prevent the covenant's enforcement. More specifically, the majority opinion holds that Friedlen would be protected by "contract formation principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced."[5]

¶67 As I see it, if Runzheimer promised to forbear only from immediately firing Friedlen, then the promise was illusory and cannot serve as consideration. Further, for the doctrines of fraudulent inducement and good faith and fair dealing to protect Friedlen from being fired shortly after signing the covenant not to compete, Runzheimer must have promised to do more than forbear from immediately firing Friedlen; it must have

---

[3] Id., ¶46.

[4] Id., ¶¶5, 59.

[5] Id., ¶5.

made an implicit promise not to fire Friedlen without cause for a reasonable period of time.

¶68 Thus, to hold that the covenant not to compete is supported by consideration from Runzheimer, and to hold that the doctrines of fraudulent inducement and good faith and fair dealing would protect Friedlen if he were fired shortly after signing the covenant not to compete, the majority opinion in effect transforms the parties' at-will employment contract into an employment contract for a reasonable duration. Understood this way, I agree with the majority opinion.

¶69 I write separately to explain my position.

I

¶70 I begin by examining the majority opinion's stated interpretation of the promise Runzheimer made in exchange for Friedlen's signing the covenant not to compete.

¶71 According to the majority opinion, Runzheimer provided consideration for the covenant not to compete by promising not to "fire Friedlen <u>at that time</u> and <u>for that reason</u>."[6] In other words, the majority opinion interprets Runzheimer's promise as nothing more than a promise to forbear from immediately terminating Friedlen's at-will employment. The majority opinion concludes that this promise was not illusory.

¶72 As the majority opinion explains, a promise is illusory "when it is conditional on some fact or event that is wholly under the promisor's control and his [or her] bringing it

---

[6] <u>Id.</u>, ¶46.

3

about is left wholly to his [or her] own will and discretion . . . ."[7] The majority opinion refers in a footnote to the prototypical example of an illusory promise described in Corbin on Contracts, which is as follows: "X guarantees payment of P's note in return for C's written promise to forbear from suing P as long as C wishes to forbear."[8] Corbin on Contracts explains that "C's words may create the illusion of a promise, but in fact, C has made no promise."[9]

¶73 There is no meaningful distinction, in my opinion, between C's promise in Corbin's prototypical example and Runzheimer's promise to Friedlen, if all Runzheimer promised was to forbear from terminating Friedlen's at-will employment for as long as Runzheimer wished to forbear. C's forbearance was left wholly to C's will and discretion. Runzheimer's forbearance from firing Friedlen was left wholly to Runzheimer's will and discretion. C promised to forbear for as long as C wished to forbear. Runzheimer promised to forbear from firing Friedlen for as long as Runzheimer wished to forbear.

¶74 Thus, if Runzheimer promised to forbear only from immediately firing Friedlen, then in my view Runzheimer's promise to Friedlen was illusory. Accordingly, under this

---

[7] Majority op., ¶45 (internal quotation marks omitted) (quoting Metro. Ventures, LLC v. GEA Assocs., 2006 WI 71, ¶33, 291 Wis. 2d 393, 717 N.W.2d 58).

[8] Majority op., ¶45 n.9 (citing 1 Joseph M. Perillo, Corbin on Contracts § 1.17, at 47 (Rev. ed. 1993).

[9] Majority op., ¶45 n.9 (citing 1 Joseph M. Perillo, Corbin on Contracts § 1.17, at 47 (Rev. ed. 1993).

interpretation of Runzheimer's promise, Runzheimer failed to provide consideration for Friedlen's signing the covenant not to compete.[10]

¶75 The majority opinion seems to recognize that the promise to forbear from immediately terminating an at-will employee is illusory. The majority opinion states that under its interpretation of Runzheimer's promise, Runzheimer "theoretically" could have fired Friedlen shortly after Friedlen signed the covenant not to compete.[11] The majority opinion contends, however, that if Runzheimer had fired Friedlen shortly after Friedlen signed the covenant not to compete, then Friedlen would "be protected by other contract formation principles such as fraudulent inducement or good faith and fair dealing, so that the restrictive covenant could not be enforced."[12]

¶76 I turn to an examination of these contract doctrines as they apply in the instant case.

II

¶77 If Runzheimer promised only to forbear from immediately terminating Friedlen's at-will employment, then I fail to see how Friedlen could prevail on a claim of fraudulent inducement or breach of the covenant of good faith and fair

---

[10] Devine v. Notter. 2008 WI App 87, ¶4, 312 Wis. 2d 521, 753 N.W.2d 557 ("If a party to a purported contract has, in fact, made only illusory promises and therefore not constrained him- or herself in any way, he or she has given no consideration and therefore no contract exists.").

[11] Majority op., ¶¶5, 59.

[12] Id.

dealing if he were fired shortly after signing the covenant not to compete.

¶78 I conclude that by invoking these contract doctrines, the majority opinion reinterprets Runzheimer's promise to Friedlen to be more than a promise to forbear from firing Friedlen for as long as Runzheimer wished to forbear. The majority opinion is in effect holding that Runzheimer implicitly promised not to terminate Friedlen's employment for a reasonable time. Unless Runzheimer's promise is so interpreted, the doctrines of fraudulent inducement and good faith and fair dealing are not applicable to the instant case.

¶79 A brief examination of the doctrines of fraudulent inducement and good faith and fair dealing will illustrate my point.

¶80 First, fraudulent inducement occurs when the "fraudulent behavior" of one party to a contract undermines the capacity of the other party to "make an informed decision."[13] A party engages in "fraudulent behavior" by knowingly or recklessly making a false statement when that statement is intended to defraud the other party and induce him or her to act

---

[13] Digicorp, Inc. v. Ameritech Corp., 2003 WI 54, ¶48, 262 Wis. 2d 32, 662 N.W.2d 652 (quoting Huron Tool & Eng'g Co. v. Precision Consulting Serv., Inc., 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).

upon it, and when the other party in fact believes the false statement and relies upon it to his or her detriment.[14]

¶81 Thus, to show that Runzheimer fraudulently induced Friedlen to sign the covenant not to compete, Friedlen would be required to demonstrate that Runzheimer made a false statement. If all Runzheimer promised was to forbear from terminating Friedlen's at-will employment at that time, what false statement did Runzheimer make? The answer seems to be none. After all, the whole point of at-will employment is that either party can terminate the employment relationship at any time.[15]

¶82 Second, the implied covenant of good faith and fair dealing reflects the "common disfavor for following the letter but not the spirit of an agreement."[16] "Every contract implies good faith and fair dealing between the parties . . . ."[17] The

---

[14] Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶12, 283 Wis. 2d 555, 699 N.W.2d 205. See also First Nat'l Bank & Trust Co. v. Notte, 97 Wis. 2d 207, 223 n.7, 293 N.W.2d 530 (1980) (explaining that to void a contract on the basis of fraudulent inducement, the party seeking rescission must demonstrate that the other party to the contract intentionally misrepresented the facts "to induce a party to manifest his assent . . . " (quoting Restatement (Second) of Contracts, § 304(1) (Tent. Draft No. 11, 1976))).

[15] See Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 567, 335 N.W.2d 834 (1983); see also id. at 579 (Day, J., concurring) ("'At will' contracts are employment contracts that . . . have no time duration and may be terminated at will by the employer or employee at any time 'for any reason or for no reason'" (emphasis added).).

[16] Beidel v. Sideline Software, Inc., 2013 WI 56, ¶27, 348 Wis. 2d 360, 842 N.W.2d 240.

[17] Id., ¶27.

doctrine of good faith and fair dealing may not be invoked, however, "to undo express terms of an agreement."[18] In other words, when "a contracting party complains of acts of the other party which are <u>specifically authorized</u> in their agreement," the court will not find "any breach of the covenant of good faith."[19]

¶83 Thus, to show that Runzheimer breached the implied covenant of good faith and fair dealing, Friedlen cannot complain of acts specifically authorized by his agreement with Runzheimer. If all Runzheimer promised was to forbear from immediately terminating Friedlen's at-will employment, on what basis could Friedlen assert a breach of the covenant of good faith and fair dealing had Runzheimer fired Friedlen shortly after he signed the covenant not to compete? The answer seems to be none. An at-will employment contract specifically authorizes the employer to fire the employee at any time and for any reason.

¶84 I conclude that Friedlen's claims of fraudulent inducement and good faith and fair dealing are doomed to failure if Runzheimer promised to forbear only from immediately firing Friedlen. In contrast, if Runzheimer is viewed as implicitly promising not to terminate its employment relationship with Friedlen for a reasonable time, then had Runzheimer fired Friedlen shortly after he signed the covenant not to compete,

---

[18] <u>Id.</u>, ¶29.

[19] <u>Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.</u>, 146 Wis. 2d 568, 577, 431 N.W.2d 721 (Ct. App. 1988) (emphasis added).

8

Friedlen would have had a viable claim of fraudulent inducement or breach of the covenant of good faith and fair dealing.

¶85 The majority opinion's reliance on the doctrines of fraudulent inducement and good faith and fair dealing therefore means that the majority opinion views Runzheimer as implicitly promising to refrain from firing Friedlen for a reasonable time after Friedlen signed the covenant not to compete. This promise, unlike a promise of continued at-will employment, is not illusory.

* * * *

¶86 The majority opinion follows two contradictory paths: It states that Runzheimer promised to forbear from firing Friedlen immediately, but implies that Runzheimer promised to forbear from firing Friedlen for a reasonable time. It states that a promise to forbear from immediately firing Friedlen constitutes consideration for Friedlen's signing the covenant not to compete, but concludes that the covenant could not be enforced if Friedlen had been fired shortly after signing it.

¶87 Runzheimer did not fire Friedlen for two years after Friedlen signed the covenant. Runzheimer views the substantial period of Friedlen's employment following Friedlen's signing the covenant not to compete as supplying any consideration that may have been missing at the time Friedlen signed the covenant. The majority opinion seems to agree.

¶88 Cases are collected by the majority opinion and in the Reporters' Notes to Comments e. and f. to § 8.06 of the Restatement (Third) of Employment Law, Proposed Final Draft

9

(2014). These cases are all over the map, but many states hold that a promise of continued indefinite employment is consideration for a restrictive covenant signed by an existing at-will employee. Some of these cases find consideration in an implied promise to forbear from firing the employee for a substantial time after the covenant is signed,[20] and others find it in the fact of continued employment for a substantial time after the covenant is signed.[21]

¶89 Thus, cases from various jurisdictions support my view that the covenant not to compete at issue in the instant case was supported by consideration from Runzheimer if Runzheimer is viewed as having implicitly promised to forbear from firing Friedlen for a reasonable time. I understand the majority opinion as in effect holding just that: In exchange for Friedlen's signing the covenant not to compete, Runzheimer promised not to terminate Friedlen's employment for a reasonable time. I therefore agree with the majority opinion.

¶90 For the reasons set forth, I write separately.

---

[20] See, e.g., Crowell v. Woodruff, 245 S.W.2d 447, 449-50 (Ky. Ct. App. 1951) (holding that a non-compete agreement entered into by an existing employee was "dubious" for "lack of mutuality," and that "[t]here must be read into the contract an implied obligation to retain [the employee for] such period of time as would deserve the right to enforce the [non-compete agreement]").

[21] See, e.g., Simko, Inc. v. Graymar Co., 464 A.2d 1104, 1107-08 (Md. App. 1983) ("[T]he continuation of employment for a substantial period beyond the threat of discharge is sufficient consideration for a restrictive covenant.").